CITY COUNCIL OF ANDERSON v. O'DONNELL.

1. The charter of the city of Anderson makes no provision for a jury upon the trial of an offender before the mayor in the first instance for a violation of municipal ordinances.

2. Where a statute provides that it shall take effect on its passage, it would seem that an amendment incorporated therein by subsequent statute would become operative from its passage.

3. A statute which changes merely the mode of trial—as, from trial by mayor and jury to a trial by the mayor with right of appeal to the full council, and a new trial there, the aldermen sitting as a jury—will regulate the trial as to offences previously committed, and is not *ex post facto*. This case distinguished from *Kring* v. *Missouri*, 107 U. S., 221.

4. The mayor may take judicial notice of the due publication of the ordinance of the city under which defendant was tried. *City Council of Charleston* v. *Chur* (2 Bail., 164), recognized and followed.

5. Under a statute providing that "in all cases appealed to the city council, the mayor shall preside, and the aldermen shall sit as a jury to try the facts involved, and may also reverse, modify, or affirm any or all of the rulings of the mayor in the first trial of the case," the appellant is entitled to a trial *de novo* before the full council.

6. As municipal courts at the time of the adoption of the constitution of 1868 had the power to try without a jury offenders for violating the ordinances of the municipality, they still have that power, notwithstanding sections 11, 13, and 14, of article I., of the Constitution.

7. The same act may constitute an offence both against the State and the municipal corporation, and both may punish it without violating any constitutional principle; and this may be so, even where the party brought to trial in the municipal court is then under prosecution in the State court for the same offence.

Before NORTON, J., Anderson, March, 1888.

The Circuit decree, omitting such facts as are stated in the opinion of this court, was as follows:

The defendant comes to this court by appeal on the following grounds, to wit:

I. Because the said council erred in trying the said case on the written evidence as taken by the mayor on the former trial.

II. Because the case should have been tried by the city council *de novo*.

III. Because the said council erred in sustaining the mayor in the following errors of law, to wit: (1) In overruling defendant's motion to dismiss the case because the same case was pending in the Court of Sessions for Anderson County, and the court was without jurisdiction. (2) In refusing defendant's motion for trial by jury. (3) In refusing to quash the proceedings, when it appeared that the offence was alleged to have been committed prior to the date the amended charter went into effect. (4) In refusing to try the case under the old charter. (5) In holding that the ordinance under which defendant was tried was good under the amended charter. (6) In refusing to allow defendant trial by full council in the first instance. (7) In holding that the ordinance under which defendant was tried had been duly published where there was not a particle of evidence of its publication.

IV. Because the said council should not have convicted the defendant on the corroborated testimony of J. M. Huckabee, who admitted that he was to be paid twenty dollars for his testimony in the event of defendant's conviction, but nothing in the case of acquittal.

V. Because there was nothing in the evidence excluding Huckabee's testimony, showing that defendant was the person who sold the whiskey to the said Bowen.

VI. Because the said council should have decided that the amended charter of the city of Anderson, in so far as it forbids trials by jury, is unconstitutional, because in conflict with secs. 11, 13, and 14 of the State Constitution.

The mayor is presumed to know whether the city ordinances have been published without any proof on the subject. He rightly

took judicial notice that they had been.    *Charleston* v. *Chur*, 2 Bailey, 164.

The prosecution submits that defendant has no right to appeal to this court.   I give the benefit of my doubt to the defendant, and hear the appeal.

Without considering the grounds of appeal separately, I shall endeavor to pass upon them all ·in the judgment I am to pronounce.   The testimony was heard by the mayor, and deemed sufficient to convict, and I concur with him.   *Ex parte Schmidt* (24 S. C., 363) necessarily denied that the constitutional provisions as to the right of trial by jury applied to trials for the violation of municipal ordinances, unless the right to jury trial was given by the charter of the town, as it was decided to have been in *Beaufort* v. *Ohlant*, 24 S. C., 158, and *Lexington* v. *Wise*, *Ibid.*, 163.

The legislature was fully authorized to provide the mode of trial, and has done so in the amendment cited.   The ordinance remained the same, both in what it forbid and in the punishment for the violation.   The amendment to the charter did not repeal these, but merely changed the mode of trial.   The violation of the ordinance occurred January 2, 1888, within twenty days after the passage of the amendment, and, as the defendant contends, before it went into effect; but the trial by the mayor was had after the amendment went into effect.   The law for the old mode of trial had been repealed, and no trial in that mode could be had, but a trial under the new law was valid.   *State* v. *Sullivan*, 14 Rich., 286.

The trial appears to have been exactly in conformity to the amendment, unless the right of appeal to the council required a trial *de novo*.   Ordinarily, this would not be true.   "An appeal is the application to a higher court to reverse the decision of a lower upon certain grounds set forth in the notice of such action, and made to appear by report of the cause by the presiding officer of the court below."   The special provision supposed to modify the mode of trial on appeal in this case is, "In all cases appealed to the city council, the mayor shall preside, * * * and the aldermen shall sit as a jury to try the facts involved, and may also reverse, modify, or affirm any or all of the rulings of the mayor

on the first trial of the case." I do not think the provision was meant to alter the ordinary mode of trial on appeal, though the expression, "shall sit as a jury to try the facts involved," would, if unqualified, lead to that conclusion; but when taken in connection with the right to "reverse, modify, or affirm all the rulings of the mayor on the first trial," they mean, I think, not only to assert the right of council to pass upon the facts as well as the law, but, as they know the witnesses, to do so freely and not with the constraint of the judge, who is ignorant of the character of the witnesses, and, further, to prevent the aldermen from taking the practice of the judges in this respect as a precedent. The use of the latter words would be meaningless if the trial were to be *de novo*, for most of the rulings of the mayor on the former trial would be not of the slightest consequence in that respect.

If the case had been pending in the Court of Sessions, it would have been rejected, because the Court of Sessions has no original jurisdiction to try the case for the violation of this ordinance. It is admitted that a warrant had been issued by a trial justice, charging the same act as a violation of the State law on the subject. That the State law might punish for the same act is immaterial. This act is an offence by a corporator against the city ordinance, and of a citizen against the State law. *State* v. *Williams*, 11 S. C., 288.

It is therefore ordered, that the appeal be dismissed, and the case remanded to the city council for the execution of the sentence.

*Messrs. Prince & Vandiver*, and *E. B. Murray*, for appellant.

*Messrs. Wells & Orr*, and *W. S. Brown*, contra.

October 9, 1888. The opinion of the court was delivered by

MR. JUSTICE MCIVER. In February, 1888, the defendant was charged before the mayor of the city of Anderson with the violation of one of the ordinances of the said city in selling spirituous liquors without a license on January 2, 1888. It being admitted that the appellant had been arrested under a warrant issued by a trial justice and bound over for trial in the Court of

Sessions for the same act of selling, his counsel submitted a motion to dismiss the case upon the ground that the same case was pending in the Court of Sessions, and, therefore, the mayor's court was without jurisdiction, which motion was refused. Appellant then demanded a trial by jury, which was likewise refused, and the mayor proceeded to try the case, without a jury, during which the various points hereinafter specified were made and overruled, and appellant was convicted and sentenced "to pay a fine of seventy-five dollars or thirty days' work on the streets of Anderson." ([1])

Thereupon defendant appealed to the city council and the case was heard by the full council. On the call of the case the council determined first to pass upon the several points of law ruled by the mayor, all of which were affirmed. The mayor then swore the aldermen to try the case as a jury, at which trial the mayor presided. Appellant then moved that the witnesses be produced and the evidence retaken in the presence of the full council, but this motion was refused, and the council proceeded to try the case upon the evidence taken by the mayor at the first trial. At this trial defendant was again convicted, and thereupon he appealed to the Circuit Court upon the several grounds mentioned in the judgment of that court. That appeal was heard by the Court of Sessions, and his honor, Judge Norton, presiding, rendered judgment dismissing the appeal, and the defendant now appeals to this court upon the several grounds set out in the record.

These grounds raise substantially the following questions :

1st. Whether there was error in refusing to dismiss the case upon the ground that another prosecution was pending in the Court of Sessions against the defendant for the same act of selling. 2d. Whether there was error in refusing to allow the defendant a trial by the full council in the first instance. 3d. Whether the trial should have been had under the original charter or under the charter as amended. 4th. Whether there was

([1]) Whether a person can be sentenced to "work on the streets" in a case where there has been no presentment of a grand jury (Const., art. I., § 19) is an interesting question never yet decided in this State, and not raised by any of the exceptions in this case.—REPORTER.

error in holding that the mayor might take judicial notice of the fact that the ordinance, under which defendant was tried, had been duly published. 5th. Whether the trial by the full council should have been *de novo*, or on the evidence taken in writing by the mayor on the first trial. 6th. Whether defendant was entitled to a trial by jury.

The first question will be passed over for the present and taken up in connection with the sixth.

As to the second question, it does not distinctly appear in the statement of the case as prepared for argument here that the defendant made any demand for trial by the full council in the first instance. But waiving this and conceding that such demand was made, we are unable to find anything either in the original or amended charter of the city of Anderson which would warrant such a demand. They both provide for a trial by the mayor in the first instance, with a right of appeal to the full council.

For a full understanding of the third question it will be necessary to state that the original charter of the city of Anderson, granted by the act of February 9, 1882 (17 *Stat.*, 972), was amended in several particulars by an act approved December 24, 1887 (19 *Stat.*, 950), and that while the former act contained a provision declaring that it should take effect immediately upon its passage, the latter act contained no such provision, and, therefore, it is argued that the act amending the charter did not take effect until the twentieth day after its approval by the governor under the provisions of the act of December 23, 1879 (17 *Stat.*, 69), and inasmuch as the act of illegal selling with which defendant was charged took place on January 2, 1888, within the twenty days after the approval of the act amending the charter, that act had not then taken effect, and hence his trial under that act was a violation of the *ex post facto* clause of the constitution.

It will be observed, however, that the amendatory act, in so far as it concerns our present inquiry, reads as follows : "That an act entitled 'An act to incorporate the city of Anderson,' approved February 9, 1882, be, and the same is hereby, amended by striking out section six thereof and inserting the following in lieu thereof, to wit:" and then follows the language of the sec-

tion directed to be inserted in the original charter. This amend-atory provision having thus been incorporated in and made a part of the original charter, it may well be questioned whether it did not thus become affected by and subject to the provisions of the 21st section of the original charter, whereby it is declared "That this act shall go into effect immediately upon its passage." *Nichols* v. *Briggs*, 18 S. C., 482. Of course, we do not mean to intimate that the provisions of the amendatory act could be ap-plied to anything done prior to its passage, for the rule is that when a statute is amended by declaring that it shall read in a given way, the amendment has no retroactive force (*Pott. Dwar. Stat.*, 165), but simply this, that inasmuch as the original charter contained a provision declaring that it should go into effect immediately upon its passage, the amendment, which is in terms made a part of the original act, might, under the same provision, take effect immediately upon its passage. If, there-fore, the amended charter be regarded as having taken effect on the day of its passage (December 24, 1887), then clearly the amendatory act is not subject to the objection urged against it, as *ex post facto* legislation; for the act with which appellant is charged was not done until January 2, 1888, several days after the adoption of the amendment.

But waiving this and assuming that the amendatory act did not take effect until the twentieth day after its approval by the governor, it is still necessary to inquire whether such act is ob-noxious to the constitutional provision forbidding the enactment of *ex post facto* laws. It is conceded that every law which has a retroactive effect is not necessarily an *ex post facto* law in the sense of this constitutional provision, for a law which simply affects the remedy or mode of proceeding, or the court in which the remedy is obtained, does not come in conflict with such provi-sion. See *State* v. *Sullivan* (14 Rich., 281), where it is said: "It has been expressly held that a statute creating a new court, or conferring a new jurisdiction, or enlarging or diminishing the powers of an existing court, is not an *ex post facto* law. Citing *Wales* v. *Belcher*, 3 Pick., 508; *Commonwealth* v. *Phil-lips*, 11 Pick., 28. Now, this is precisely the nature of the change of the law by the amendment to the charter of the city

of Anderson. There was no change made in the nature of the offence, or of its constituent elements, nor in the nature or amount of the evidence necessary to prove the charge, nor was the nature or amount of the punishment altered. It was simply a change in the mode of trial. We do not think, therefore, that such an amendment can be properly regarded as an *ex post facto* law.

The case of *Kring* v. *Missouri* (107 U. S., 221), relied on by counsel for appellant, we do not think is in point. In that case the appellant had pleaded guilty of murder in the second degree, and upon appeal from the judgment rendered upon such plea the judgment was set aside and a new trial ordered, upon the ground that appellant had been misled into entering that plea. He was then tried again and convicted of murder in the first degree, when he appealed again upon the ground that under the law of Missouri, as it stood at the time the homicide was committed, the acceptance of a plea of guilty of murder in the second degree operated as an acquittal of the charge of murder in the first degree. It appeared, however, that after the homicide was committed, but before the plea of guilty was accepted, the law had been changed, so as to abrogate the rule previously established as to the effect of the acceptance of the plea of guilty of murder in the second degree when the judgment rendered thereon has been set aside, and to declare that when such judgment has been set aside, the former trial is to be regarded as a mistrial, and the new trial is to be had as if there had been no previous trial or judgment. So that the only question before the Supreme Court of the United States was, whether this change in the law was *ex post facto* in its character when applied to appellant's case, and that court, by a bare majority, held that it was.

The main ground of their decision, however, seems to have been that the change in the law did not merely affect the mode of proceeding, but deprived the appellant of the protection which, under the old law, the former judgment would have afforded him; for it was conceded that, under the law as it stood at the time the homicide was committed, he could never have been convicted of murder in the first degree after judgment rendered on his plea of guilty of murder in the second degree, even though that judg-

ment was subsequently set aside. As Mr. Justice Miller, in de-
livering the opinion of the majority of the court, said, the new
law "so changes the rule of evidence, that what was conclusive
evidence of innocence of the higher grade of murder when the
crime was committed, namely, a judicial conviction for a lower
grade of homicide, is not received as evidence at all, or, if re-
ceived, is given no weight in behalf of the offender. It also
changes the punishment; for, whereas the law as it stood when
the homicide was committed was that, when convicted of murder
in the second degree, he could never be tried or punished by
death for murder in the first degree, the new law enacts that
he may be so punished, notwithstanding the former conviction."

Counsel for appellant also relies upon certain language of Mr.
Justice Washington, in *United States* v. *Hall* (2 Wash., 366),
quoted with approval in *Kring* v. *Missouri*. That language
fully quoted is as follows: "An *ex post facto* law is one which,
in its operation, makes that criminal which was not so at the
time the action was performed: or which increases the punish-
ment, *or, in short, which, in relation to the offence or its conse-
quences, alters the situation of a party to his disadvantage.*" And
again, he adds, by way of application to that case, which was for
a violation of the embargo laws: "If the enforcing law applies
to this case, there can be no doubt that, so far as it *takes away
or impairs the defence* which the law had provided the defend-
ant at the time when the condition of this bond became forfeited,
it is *ex post facto* and inoperative."

Now, it is quite clear that the amendment to the plaintiff's
charter does not in any respect change the punishment to which
the appellant was liable under the original charter, nor does it
alter any rule of evidence then existing, nor does it "*in relation
to the offence or its consequences*" alter the situation of appel-
lant, nor does it *take away or impair any defence* which under
the old law he might avail himself of. It seems to us clear,
therefore, that there is nothing in either of the cases relied on
applicable to the case under consideration.

The fourth question is disposed of by the case of *The City
Council of Charleston* v. *Chur* (2 Bail., 164), where the point is

distinctly ruled adversely to the view contended for by the appellant.

On the fifth question we cannot concur in the view taken by the Circuit Judge, and upon this ground there must be a new trial. This question turns upon a proper construction of the sixth section of plaintiff's charter as amended by the act of December 24, 1887. That section empowers the mayor to try all offenders against the ordinances of the city, in a summary manner, without a jury, with the right to the party feeling himself aggrieved, of appeal to the city council, provided he gives the proper notice and security "to appear and defend" before the city council. The final provision is in these words: "In all cases appealed to the city council the mayor shall preside, or some alderman as hereinbefore provided, and the aldermen shall sit as a jury to try the facts involved, and may also reverse, modify, or affirm any or all of the rulings of the mayor in the first trial of the case."

It seems to us that this language plainly implies that "in all cases appealed to the city council" the trial must be *de novo*, and the witnesses must be examined before the council just as though there had been no previous trial. It will be observed that the provision is that "the aldermen shall sit *as a jury*, to try the facts involved," and this necessarily implies that the witnesses are to be sworn and examined just as in other cases of jury trial; for we know of no instance where that mode of trial is prescribed, in which the presence of the witnesses can be dispensed with except by consent, and except where their testimony is permitted to be taken by commission. It seems to us that it would be a contradiction in terms to say that, when the statute expressly declares that the aldermen "shall sit *as a jury* to try the facts involved," they may nevertheless try such facts in a way totally unknown to a jury trial. We can conceive of no other reason why the words just quoted should have been inserted in the statute, except for the purpose of showing that the cases appealed to the city council were not to be heard as appeals usually are, but that the facts involved were to be tried by the aldermen, sitting as a jury, in the only mode recognized in that mode of trial.

We do not think that the additional words, "and may also reverse, modify, or affirm any or all of the rulings of the mayor in the first trial of the case," can have the effect of qualifying the conclusion to which the previous words, "shall sit as a jury," manifestly point.   On the contrary, these additional words show the purpose to confer upon the aldermen two different and distinct powers: 1st, to try the facts involved sitting as a jury; 2d, to reverse, affirm, or modify the law as ruled by the mayor. This is apparent from the use of the word "also,"—"and may *also* reverse," &c., which shows that an additional power was intended to be conferred, and that the province of the aldermen was not to be confined merely to trying the facts involved, but that they should *also* have power to review the law as applied by the mayor, to which the word "rulings" clearly points, as that is a word peculiarly applicable to a legal question, and is seldom, if ever, applied to a finding of fact.

It seems to us that the language of the statute clearly indicates that the intention was, "in all cases appealed to the city council," that the whole case, both fact and law, should be retried, *de novo*, and not heard as appeals usually are.   There are other expressions in the statute which point to the same conclusion.   The trial by the mayor is spoken of as "the first trial of the case," manifestly contemplating a second trial by the council, and not a mere appeal; for the hearing of an appeal in the usual form is not, properly speaking, a trial of the case.   See *State* v. *David*, 14 S. C., at page 433; *State* v. *Jefcoat*, 20 *Id.*, 386.   Then, again, the condition of the bond which defendant must give in order to carry his case before the full council is— *not* to appear and prosecute his appeal, which would be the most appropriate language, if the intention was to give him a mere right of appeal, but the language is, "to appear and *defend*," just such language as would be appropriate to a re-trial, or a second trial of the case.

The sixth question involves the appellant's right to a trial by jury.   This right is claimed under three sections of the Constitution, to wit, art. I., sec. 11, which declares:   "The right of trial by jury shall remain inviolate;" sec. 13, which declares that every person charged with any crime or offence shall have

the right to a speedy and public trial "by an impartial jury;" and sec. 14, which declares that "the general assembly shall not enact any law that shall subject any person to punishment without trial by jury." To give these provisions the extensive effect claimed for them in the argument of one of the counsel for appellant would result in depriving the legislature of the power of investing a municipal court with jurisdiction to try, without a jury, one who violates *any* ordinance of such municipality : for if, as is well settled (*State ex rel. Burton* v. *Williams*, 11 S. C., 292), every ordinance passed by a municipal corporation derives its authority from the legislative power of the State, and if, as is argued, the general assembly has no power to enact any law subjecting a person to punishment without a trial by jury, then it would follow necessarily that the legislature could not, either directly or through the legislative power it may confer upon a municipal corporation, provide for the trial without a jury of a person for violating *any* ordinance of a municipal corporation. But so far as we are informed there is no text writer and no case which goes to this extent. Even Judge Dillon, in his work on municipal corporations (vol. I., sec. 433, 3d edit.), the authority principally relied on by appellant, expressly admits that "violations of municipal by-laws proper, such as fall within the description of municipal police regulations, * * * the legislature may authorize to be prosecuted in a summary manner, by and in the name of the corporation, and need not provide for a trial by jury."

But what is conclusive upon this point is that the view contended for is directly in conflict with the recent decision of this court in *Ex parte Schmidt*, 24 S. C., 363. Indeed, the constitution itself seems to recognize what we shall presently see was the well settled doctrine, that these special provisions securing the right of trial by jury related only to those cases, or, rather to that character of cases, in which the right existed at the adoption of the constitution. For, recognizing the fact that prior to the adoption of the constitution, offences of a certain character were triable by inferior courts without a jury, it provides in section 19 of art. I.: "All offences less than felony, and in which the punishment does not exceed a fine of one hundred dollars, or

imprisonment for thirty days, shall be tried summarily before a justice of the peace, or other officer authorized by law," &c. Here the language is imperative—"*shall* be tried before a justice of the peace or other officer"—and there is no provision for a jury. This, it seems to us, was intended to show that, notwithstanding the previous provisions securing the right of trial by jury, a certain class of offences, of a minor character, should be tried before an inferior tribunal, as they had been prior to the adoption of the constitution.

As we have said, the well settled doctrine, in this State at least, as well as in many other States, is that these general constitutional provisions securing the right of trial by jury are to be read in the light of the law existing at the adoption of the constitution. They were not designed to *extend* the right of trial by jury, but simply to *secure* that right as it then existed. To use the language of Wilds, J., in *White* v. *Kendrick* (1 Brev., 471), these provisions "established an epoch from which legislative innovation on the trial by jury should cease." And after mentioning several tribunals, such as courts of equity and ordinary, courts martial and courts of justices of the peace, in which the right of trial by jury was never recognized, he adds: "They are, however, exceptions which were familiarly known at the adoption of our constitution, and were intended to be as inviolably preserved in that instrument as the rule itself." To the same effect see the remarks of Earle, J., in *State* v. *Maxcy*, 1 McMull., 501, and of O'Neall, J., in *State* v. *Simons*, 2 Speer, 761. See also *State* v. *Glenn* (54 Md., 572), where it is said: "When it is declared that a party is entitled to a speedy trial by an impartial jury, that must be understood as referring to such crimes and accusations as have, by the regular course of the law and the established modes of procedure, as theretofore practised, been the subjects of jury trials." See also *McGear* v. *Woodruff* (4 Vroom (N. J.), 213), where it was held that such a constitutional provision does not prevent the enforcement of municipal ordinances without a jury trial.

It is clear, therefore, that as municipal courts had the power to try offenders for violating the ordinances of the municipality without a jury, at the time of the adoption of the constitution,

they still have that power, notwithstanding the several provisions of that instrument invoked by the appellant.

It is contended, however, that the jurisdiction of a municipal court is limited to the trial of such offences as are not embraced under "the general criminal legislation of the State," and that where the act charged constitutes an offence against the criminal law of the State, a person charged with such act cannot be tried by a municipal court without a jury, even though such act may also be a violation of an ordinance of the municipality; and such seems to be the view of Judge Dillon. This view seems to be based upon the idea that otherwise a person might be liable to be tried and punished twice for the same offence; and this involves the first question presented by this appeal. As to this question there seems to be no little conflict of opinion, and authorities of high respectability might be cited on both sides.

The courts of this Sate have, however, inclined to the view adopted by Judge Cooley, where he says, in his valuable work on Constitutional Limitations, page 199: "The same act may constitute an offence both against the State and the municipal corporation, and both may punish it without any violation of any constitutional principle," and in a note cites numerous cases to support that view. In one of those cases (*Mayor of Mobile* v. *Allaire*, 14 Ala., 400), in which the validity of an ordinance imposing a fine of fifty dollars for an assault and battery committed within the limits of the city was involved, Collier, C. J., uses the following language, which seems peculiarly appropriate to the case under consideration: "The object of the power conferred by the charter, and the purpose of the ordinance itself, was, not to punish for an offence against the criminal justice of the country, but to provide a mere *police regulation* for the enforcement of good order and quiet within the limits of the corporation. So far as an offence has been committed against the public peace and morals, the corporate authorities have no power to inflict punishment, and we are not informed that they have attempted to arrogate it. It is altogether immaterial whether the State tribunal has interfered and exercised its powers in bringing the defendant before it to answer for the assault and battery; for whether he has there been punished or acquitted is alike unim-

portant. The offences against the corporation and the State, we have seen, are distinguishable and wholly disconnected, and the prosecution at the suit of each proceeds upon a different hypothesis : the one contemplates the peace and good order of the city; the other has a more enlarged object in view, the maintenance of the peace and dignity of the State." That this view has been recognized and approved in this State may be seen by reference to *State ex rel. Burton* v. *Williams*, 11 S. C., 292, and the cases therein cited.

It seems to us, therefore, that the municipal court had jurisdiction and could try the case against appellant, and that there was no error in refusing to dismiss the case on the ground that a prosecution in the Court of Sessions for the same act of selling had previously been commenced against appellant.

The judgment of this court is, that the judgment of the Circuit Court be reversed, on the ground of error in not allowing appellant a trial *de novo* before the city council, and that the case be remanded for trial according to the views herein announced.