707 A.2d 841

**William H. MILES**

v.

**STATE of Maryland.**

**No. 14, Sept. Term, 1996.**

Court of Appeals of Maryland.

April 6, 1998.

216

Sherrie B. Glasser, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Gary E. Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI,* and RAKER, JJ., and ROBERT C. MURPHY, Judge (retired), Specially Assigned.

ELDRIDGE, Judge.

The petitioner William H. Miles was found guilty of common law battery for punching a man who had denied Miles's request for money. Based on the same act, Miles was also found guilty of "aggressive panhandling" in violation of former Art. 19, § 249, of the Baltimore City Code, which made it unlawful, *inter alia*, to "touch[ ] another person in the course of panhandling without that person's consent."[1] Miles received separate sentences for the battery and the aggressive panhandling. Miles appealed, arguing, *inter alia*, that common law battery was a lesser-included offense and that, there-

---

* Karwacki, J., now retired, participated in the hearing of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of the opinion.

1. Art. 19, § 249, was initially adopted by the Mayor and City Council of Baltimore as Ordinance 275 in 1993. Miles's punching the victim occurred on April 2, 1994. In August 1994, the United States District Court for the District of Maryland held that § 249 was unconstitutional in that it violated the Equal Protection Clause of the Fourteenth Amendment. In December 1994, the Mayor and City Council of Baltimore repealed former Art. 19, § 249, and enacted an entirely new § 249, designed to correct the constitutional infirmity found by the federal court. Miles was tried for violating the former § 249, as well as for battery, on January 19, 1995. The trial transcript indicates that neither the trial judge nor the prosecuting attorney nor the assistant public defender representing Miles were aware of the federal court decision or of the repeal of the statute.

fore, the sentence for battery should merge into the sentence for aggressive panhandling. The Court of Special Appeals, in an unreported opinion, applied the required evidence test and concluded that the sentences should not merge because battery and aggressive panhandling each contain elements which the other does not. We granted Miles's petition for a writ of certiorari to determine the question of merger. *Miles v. State*, 342 Md. 263, 674 A.2d 961 (1996).

## I.

We have often pointed out that, as a matter of Maryland common law, the normal standard for determining whether one offense merges into another is what is usually called the "required evidence test." *State v. Lancaster*, 332 Md. 385, 391, 631 A.2d 453, 456 (1993); *Eldridge v. State*, 329 Md. 307, 319, 619 A.2d 531, 537 (1993); *In re Montrail M.*, 325 Md. 527, 531, 601 A.2d 1102, 1104 (1992); *Biggus v. State*, 323 Md. 339, 350, 593 A.2d 1060, 1065 (1991); *Williams v. State*, 323 Md. 312, 316, 593 A.2d 671, 673 (1991); *Snowden v. State*, 321 Md. 612, 616, 583 A.2d 1056, 1058 (1991). As these cases indicate, the required evidence test is applicable to common law offenses as well as offenses under statutes enacted by the General Assembly. Recently, in *State v. Lancaster, supra*, 332 Md. at 391–392, 631 A.2d at 456–457, we explained the required evidence test as follows:

"The required evidence test 'focuses upon the elements of each offense; if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter.' *Snowden v. State, supra*, 321 Md. at 617, 583 A.2d at 1059, quoting *State v. Jenkins*, 307 Md. 501, 517, 515 A.2d 465, 473 (1986). Stated another way, the 'required evidence is that which is minimally necessary to secure a conviction for each ... offense. If each offense requires proof of a fact which the other does not, or in other words, if each offense contains an element which the other does not,' there is no merger under the required evidence test even though both offenses are based upon the same act

or ·acts. 'But, where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other,' and where both 'offenses are based on the same act or acts, ... merger follows....' *Williams v. State, supra*, 323 Md. at 317–318, 593 A.2d at 673, quoting in part *Thomas v. State*, 277 Md. 257, 267, 353 A.2d 240, 246–247 (1976)."

■ When one offense is found to be a lesser-included offense of another under the required evidence test, ordinarily a "sentence may be imposed only for the offense having the additional element or elements." *State v. Lancaster, supra*, 332 Md. at 392, 631 A.2d at 457. *See also, In re Montrail M., supra*, 325 Md. at 534, 601 A.2d at 1105; *Biggus v. State, supra*, 323 Md. at 350–351, 593 A.2d at 1065–1066; *Snowden v. State, supra*, 321 Md. at 617–619, 583 A.2d at 1059–1060; *Middleton v. State*, 318 Md. 749, 760–761, 569 A.2d 1276, 1281 (1990); *State v. Jenkins*, 307 Md. 501, 521, 515 A.2d 465, 475 (1986); *Johnson v. State*, 283 Md. 196, 203–204, 388 A.2d 926, 930 (1978); *Flannigan v. State*, 232 Md. 13, 19, 191 A.2d 591, 593–594 (1963). This is true even where the lesser-included offense carries a greater maximum authorized sentence. "[W]here two offenses are deemed the same under the required evidence test, the included offense merges into the offense having a distinct element regardless of the maximum authorized sentence for each offense." *State v. Lancaster, supra*, 332 Md. at 405, 631 A.2d at 464.

■ The required evidence test, however, is not the only standard for resolving questions of merger. For example, where one offense is included in another, the offenses still may not merge under some circumstances where the General Assembly has "specifically or expressly authorized multiple punishments." *State v. Lancaster, supra*, 332 Md. at 394, 631 A.2d at 458; *Randall Book Corp. v. State*, 316 Md. 315, 323, 558 A.2d 715, 719 (1989) ("when specifically authorized by the legislature, cumulative sentences ... may under some circumstances be imposed"); *Whack v. State*, 288 Md. 137, 143–150, 416 A.2d 265, 268–271 (1980), *appeal dismissed and cert.*

*denied,* 450 U.S. 990, 990, 101 S.Ct. 1688–1689, 68 L.Ed.2d 189 (1981).

Conversely, where two offenses are separate under the required evidence test, there still may be a merger for sentencing purposes based on considerations such as the rule of lenity, historical treatment, judicial decisions which generally hold that the offenses merge, and fairness. *Biggus v. State, supra,* 323 Md. at 356, 593 A.2d at 1068; *Williams v. State, supra,* 323 Md. at 320–322, 593 A.2d at 675; *Monoker v. State,* 321 Md. 214, 222–224, 582 A.2d 525, 529 (1990); *White v. State,* 318 Md. 740, 746, 569 A.2d 1271, 1274 (1990). *See also Spitzinger v. State,* 340 Md. 114, 131–144, 665 A.2d 685, 693–700 (1995) (Raker, J., dissenting); *State v. Lancaster, supra,* 332 Md. at 394, 631 A.2d at 458. When merger is not based upon the required evidence test, and therefore neither offense is the greater in terms of elements, the offense carrying the highest maximum authorized sentence is ordinarily considered to be the greater offense. Thus, "the offense carrying the lesser maximum penalty merges into the offense carrying the greater penalty." *Williams v. State, supra,* 323 Md. at 322, 593 A.2d at 676. *See, e.g., White v. State, supra,* 318 Md. at 747, 569 A.2d at 1274; *State v. Jenkins, supra,* 307 Md. at 521, 515 A.2d at 475.

A question not previously decided by any decision of this Court, but presented by this case, concerns Maryland common law merger principles where the same conduct constitutes two offenses, one being a statewide common law offense or a statutory offense under an enactment by the General Assembly, and the other being a locally enacted offense. The two offenses involved in this case are the common law crime of battery and "aggressive panhandling" proscribed by a former Baltimore City ordinance.

## II.

The facts of the instant case are uncomplicated. Miles was tried before a jury in the Circuit Court for Baltimore City and convicted of common law battery and "aggressive panhandling" based on the events of April 2, 1994. On that after-

noon, Norman Morrison and two female companions had just parked their cars along a Baltimore City street when Miles approached them asking for money. Although they told him no, Miles followed them and continued to ask for money. Morrison told his two companions to keep walking, while he went in a different direction, apparently because he feared for their safety. Miles followed Morrison, tapped him on the shoulder, and punched him in the face, cracking his glasses and cutting him under his eye. Morrison contacted the police and later identified Miles as his assailant from a photographic array.

Miles was charged with common law battery as well as "aggressive panhandling" in violation of former Art. 19, § 249, of the Baltimore City Code. The record makes it absolutely clear that the prosecution of both charges was based on the same act, namely Miles's punching Morrison in the face. Miles was convicted of both offenses. The circuit court sentenced Miles to 10 years imprisonment for battery and a consecutive 90-day term of imprisonment for aggressive panhandling.

Miles appealed to the Court of Special Appeals, arguing, *inter alia*, that his conviction for battery should have merged into his conviction for aggressive panhandling, inasmuch as all of the elements of battery were included in the elements of aggressive panhandling. Miles claimed that battery is a lesser-included offense of aggressive panhandling under the required evidence test.

The Court of Special Appeals applied the required evidence test and held that battery was not a lesser-included offense of aggressive panhandling because, in that court's view, each offense required proof of an element not required by the other. To convict for aggressive panhandling, the State was required to prove that Miles asked Mr. Morrison for money in a public place and also acted in one of six specified ways.[2] Although it was unclear under which of the six delineated

_____

2. At the time of Miles's offense, Art. 19, § 249(b), of the Baltimore City Code provided as follows:

actions the jury convicted Miles, the Court of Special Appeals assumed that it was former Art. 19, § 249(b)(2)(ii), which prohibits "touching another person in the course of panhandling without that person's consent." According to the Court of Special Appeals, "[f]or the State to convict a defendant of battery, it must prove that the defendant used unlawful force with an intent to touch the victim." The Court of Special Appeals noted that aggressive panhandling, as defined by the Baltimore City Code, required proof of a number of elements not required to establish battery, such as begging in a public place. The more difficult question, however, was whether battery contained any elements not included in aggressive panhandling. The court found that, while both battery and aggressive panhandling each required an unconsented touching, battery included an additional element of intent not required to convict for aggressive panhandling. Thus, the intermediate appellate court held that each offense required proof of an element not required by the other, so that battery did not merge into aggressive panhandling.

---

"(b) Definitions.

(1) 'Panhandling' means any act by which one person asks, begs or solicits alms from another or others in person, by requesting an immediate donation of money or other thing of value. Panhandling includes the spoken, written, or printed word or such other act conducted with the purpose of obtaining an immediate donation of money or thing of value.

(2) 'Aggressive Panhandling' means panhandling which is accompanied by one or more of the following:

(i) approaching, speaking to, or following a person in such a manner as would cause a reasonable person to fear bodily harm or the commission of a criminal act upon the person, or upon property in the person's immediate possession;

(ii) touching another person in the course of panhandling without that person's consent;

(iii) continuously panhandling from a person, or following the person, after the person has made a negative response;

(iv) intentionally blocking or interfering with the safe passage of a person or a vehicle by any means, including unreasonably causing a person to take evasive action to avoid physical contact;

(v) using obscene or abusive language either during the course of panhandling or following refusal; or

(vi) acting with the intent of intimidating another person into giving money or another thing of value."

Under our view of the merger issue, however, we need not and shall not decide whether each offense required proof of an element not required by the other.

## III.

The numerous merger cases previously decided by this Court have either involved statutory offenses under enactments of the General Assembly or common law offenses. Thus, heretofore we have only considered the merger of offenses which were enacted by or subject to the control of one legislative body. In all of these cases, we have first turned to the required evidence test as the usual standard for determining merger questions. We have also looked at express legislative intent, the rule of lenity, history, treatment by other jurisdictions, and fairness. We are aware of no case, however, in this jurisdiction or elsewhere, which holds that the required evidence test should be employed to merge a state common law or statutory offense into an offense under a locally enacted ordinance.

The early American common law view was that offenses under state law and offenses under locally enacted ordinances constitute separate and distinct crimes, even when they proscribe the same conduct. *See, e.g., Norwood v. Wiseman*, 141 Md. 696, 700, 119 A. 688, 690 (1922); *Rossberg v. State*, 111 Md. 394, 414, 74 A. 581, 583 (1909) (" 'The State law and the [municipal] by-law may both stand together if not inconsistent. Indeed, an act may be a penal offence under the laws of the State, *and further penalties,* under proper legislative authority, [may] be imposed for its commission by municipal by-laws, and the enforcement of the one would not preclude the enforcement of the other,' " quoting *Cooley's Constitutional Limitations*, 421 (5th Ed.)); *Shafer v. Mumma*, 17 Md. 331, 336 (1861); *Mayor and Aldermen, etc. v. Allaire*, 14 Ala. 400, 403 (1848) (offenses "against the corporation and the State, we have seen are distinguishable, and wholly disconnected"); *Van Buren v. Wells*, 53 Ark. 368, 374, 14 S.W. 38, 39 (1890) ("When made penal by the State and the city or town, each act becomes a separate offense against the State and the munici-

pality. In that event the penalty imposed by the city or town is superadded to that fixed by the general law, on account of the additional wrong done—for the offense against the municipality"); *C. Theisen v. W.H.H. McDavid, City Marshal,* 34 Fla. 440, 443, 16 So. 321, 322 (1894) (an "offender may be tried and punished for the same act under both [an] ordinance and [a] State law"); *Kemper v. Commonwealth,* 85 Ky. 219, 222, 3 S.W. 159, 160 (1887) (offenses "against the city and the State, although consisting of the same act, are quite distinguishable, and the prosecution for each offense proceeds upon different grounds"); *State v. Lee,* 29 Minn. 445, 453, 13 N.W. 913, 915 (1882) ("The same act, prohibited by both the city and the state, may thus constitute two offences, which are intrinsically and legally distinguishable. In support of this proposition the authorities are abundant and nearly unanimous"). *See also, e.g., Hankins v. The People,* 106 Ill. 628 (1883); *Wragg v. Penn Township,* 94 Ill. 11 (1879); *Town of Bloomfield v. Trimble,* 54 Iowa 399, 6 N.W. 586 (1880); *Louisiana v. Clifford,* 45 La. Ann. 980, 13 So. 281 (1893); *New Jersey v. Plunkett,* 3 Har. 5 (N.J.1840); *Oregon v. Bergman,* 6 Or. 341 (1877); *Oregon v. Sly,* 4 Or. 277 (1872); *City Council v. O'Donnell,* 29 S.C. 355, 7 S.E. 523 (1888); *Greenwood v. State,* 65 Tenn. 567, 6 Baxt. 567 (1873).

▇ The earlier view that state offenses and locally enacted offenses are treated as separate and distinct has been modified, because of double jeopardy principles, with respect to successive prosecutions. Thus, where a state offense and a locally enacted offense would be deemed the same under double jeopardy principles, a conviction or acquittal for one would ordinarily be a bar to a subsequent prosecution for the other. *Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970); *Thomas v. State,* 277 Md. 257, 267 n. 5, 353 A.2d 240, 246 n. 5 (1976). Double jeopardy principles may also require modification of the traditional common law view, under certain circumstances, with regard to the imposition of multiple punishments.

Nevertheless, the defendant makes no argument in this Court that double jeopardy principles required that his battery conviction under state law merge into his aggressive panhandling conviction under the local ordinance. Moreover, we question whether an argument to this effect would be very persuasive. *Cf. State v. Lancaster, supra,* 332 Md. at 403, 631 A.2d at 462–463 (majority opinion), 332 Md. at 422–425, 631 A.2d at 473–474 (McAuliffe, J., dissenting), 332 Md. at 434–435, 631 A.2d at 478–479 (Chasanow, J., dissenting). Since, however, no argument based upon the double jeopardy prohibition has been made in this case, we need not explore the matter further.

■ In light of the traditional common law principle that a state offense and a locally enacted offense are normally treated as separate and distinct, regardless of the elements of each, a state offense will not be deemed to be a lesser included offense of a locally enacted offense for purposes of merger under Maryland common law. The state offense will not, under the required evidence test, merge into an offense created by an ordinance enacted by a county or a municipality.

In addition to its common law foundation, this result is supported by sound public policy. Generally, locally enacted ordinances have a lesser status than state law and must, in the event of conflict, yield to general state law. *See* Constitution of Maryland, Article XI–A, § 3, Article XI–E, § 6, Article XI–F, § 10. Application of the required evidence test to merge a state offense into a locally enacted offense would permit local governments to supercede state criminal law policy simply by passing an ordinance creating an offense which includes all of the elements of a particular state crime, which adds as an additional element a circumstance normally present when the state crime is committed, but which carries a drastically reduced maximum penalty. Under the required evidence test, whenever both offenses were charged based on the same acts, and the defendant was convicted, the local policy concerning punishment would prevail over the state policy. This would

not be in accord with the normal relationship between state law and locally enacted ordinances.

Therefore, the required evidence test has no application to merger questions involving a state common law or statutory offense and an offense under a locally enacted ordinance.

## IV.

■ Our holding that the required evidence test is inapplicable, however, does not end the merger inquiry. As previously indicated, where the same act constitutes different offenses, and where there is no merger under the required evidence test, there still may be a merger for sentencing purposes. The applicable principles of Maryland law were summarized in *Williams v. State, supra,* 323 Md. at 321–322, 593 A.2d at 675, as follows:

"When two offenses do not merge under the required evidence test, we have applied as a principle of statutory construction the 'rule of lenity,' which 'provides that doubt or ambiguity as to whether the legislature intended that there be multiple punishments for the same act or transaction 'will be resolved against turning a single transaction into multiple offenses.' *White v. State, supra,* 318 Md. at 744, 569 A.2d at 1273, quoting *Simpson v. United States,* 435 U.S. 6, 15, 98 S.Ct. 909, 914, 55 L.Ed.2d 70, 78 (1978) (quoting *Bell v. United States,* 349 U.S. 81, 84, 75 S.Ct. 620, 622, 99 L.Ed. 905, 910–911 (1955)). *See, e.g., Hunt v. State,* 312 Md. [494], 510, 540 A.2d [1125] 1138 [1133] [(1988)]; *State v. Jenkins, supra,* 307 Md. at 518–521, 515 A.2d at 473–475. *See also Monoker v. State, supra,* 321 Md. at 223, 582 A.2d at 529 (pointing out that the rule of lenity is applicable where both offenses are statutory or where one offense is statutory and the other is a common law crime).

"In addition to the rule of lenity, we have looked to other considerations in deciding whether two offenses, when based on the same conduct, should be deemed the same. As Judge Cole for the Court explained in *White v. State, supra,* 318 Md. at 745–746, 569 A.2d at 1274,

'like other canons of statutory construction, the rule of lenity is neither absolute nor exclusive. Other considerations may also be applicable in arriving at a principled decision.... For example, in deciding merger questions, we have examined the position taken in other jurisdictions. We have also looked to whether the type of act has historically resulted in multiple punishments. *See Jenkins,* 307 Md. at 518–21, 515 A.2d at 473–75; *State v. Boozer,* 304 Md. 98, 497 A.2d 1129 (1985). The fairness of multiple punishments in a particular situation is obviously important. *See State v. Oliver,* 302 Md. 592, 611 n. 12, 490 A.2d 242, 251 n. 12 (1985); *Brooks,* 284 Md. at 423, 397 A.2d at 599–600. *Cf. Cousins v. State,* 277 Md. 383, 397, 354 A.2d 825, 833, *cert. denied,* 429 U.S. 1027, 97 S.Ct. 652, 50 L.Ed.2d 631 (1976).'

"More recently, in *Monoker v. State, supra,* 321 Md. at 222–223, 582 A.2d at 529, we held that, under the circumstances there presented, the offense of soliciting one to perform a criminal act should merge into conspiracy to commit the same act, saying:

'[B]ecause the solicitation was part and parcel of the ultimate conspiracy and thereby an integral component of it, it would be fundamentally unfair to Monoker for us to require him to suffer twice....' "

See also *Spitzinger v. State,* supra, 340 Md. at 132, 665 A.2d at 693 (Raker, J., dissenting); *Biggus v. State,* supra, 323 Md. at 356, 593 A.2d at 1068.

Although the rule of lenity is not applicable where both offenses involved are common law offenses, it is applicable where one offense is a common law crime and the other offense was created by statute. *Monoker v. State, supra,* 321 Md. at 223, 582 A.2d at 529; *White v. State, supra,* 318 Md. at 745–747, 569 A.2d at 1273–1274. Since one of the offenses here involved was created by a Baltimore City ordinance, the rule of lenity is applicable. Furthermore, as previously mentioned, the prosecution of both offenses was based on the same act of Miles punching Morrison in the face. Nothing in the

language of former Art. 19, § 249, of the Baltimore City Code suggests that the City Council intended cumulative punishments when a violation of the ordinance also constituted another offense. Under the rule of lenity, therefore, we do not attribute such intent to the City Council.

As earlier discussed, where there is merger under the rule of lenity, the offense carrying the lesser maximum penalty ordinarily merges into the offense carrying the greater maximum penalty. Moreover, for purposes of merger, a statewide common law offense or an offense under an enactment of the General Assembly should always be considered greater than an offense under a locally enacted ordinance.[3]

Consequently, in light of the rule of lenity, Miles's conviction for aggressive panhandling will be vacated.

## V.

Although not raised or discussed by the parties, there is another reason for vacating Miles's aggressive panhandling conviction. As previously noted, *supra* n. 1, the aggressive panhandling ordinance in effect when Miles punched Morrison in the face, and under which Miles was convicted, was held unconstitutional by the United States District Court for the District of Maryland in August 1994. *See Patton v. Baltimore City*, No. S93–2389 (D.Md., August 19, 1994). The Mayor and City Council of Baltimore filed no appeal from this decision, and, instead, acquiesced in the federal court's holding of unconstitutionality. The Mayor and City Council, referring to the federal court decision, repealed the aggressive panhandling statute and enacted an entirely new Art. 19, § 249, in December 1994. *See* Baltimore City Ordinance 447, enacted December 15, 1994. Miles was tried and convicted for violating the repealed statute in January 1995.

---

**3.** In fact, the maximum jail sentence which a county or municipality may provide for an offense is six months imprisonment. Maryland Code (1957, 1996 Repl.Vol., 1997 Supp.), Art. 23A, § 3(a); Art. 25A, § 5(A)(2).

230 ▮▮▮▮▮▮

▮▮▮ Under Maryland common law "the repeal of a statute creating a criminal offense, after conviction under the statute but before final judgment, including the final judgment of the highest court empowered to review the conviction, requires reversal of the judgment. . . ." *Bell v. State,* 236 Md. 356, 363, 204 A.2d 54, 57 (1964). Under the common law rule, it was often stated that the repeal of a statute "operated as a pardon of all offenses under it, and superseded the jurisdiction of the court in any suit pending, to enforce a penalty under such repealed statute." *Rutherford v. Swink,* 96 Tenn. 564, 566–567, 35 S.W. 554, 555 (1896). *See* 6 McQuillin, *The Law of Municipal Corporations,* § 21.44 at 370 (3rd ed. 1988 Revised Volume).

▮▮▮ With respect to statutes passed by the General Assembly, however, this rule has been modified by the general saving clause statute, Maryland Code (1957, 1996 Repl.Vol.), Art. 1, § 3. As this Court explained in *State v. Johnson,* 285 Md. 339, 345, 402 A.2d 876, 879 (1979), "[w]e interpret this provision as saving any penalty, forfeiture or liability incurred under a statute which is subsequently repealed or amended unless the repealing act expressly provides otherwise." Thus, under the general saving clause, when the General Assembly repeals or amends a statute, the common law rule does not apply, and a prosecution under the repealed statute may ordinarily continue despite the repeal. *See Bell v. State, supra,* 236 Md. at 367, 204 A.2d at 60.

▮▮▮ Nevertheless, as Judge Oppenheimer pointed out in his dissenting opinion in *Bell v. State, supra,* 236 Md. at 373, 204 A.2d at 63, "it is generally held that state saving statutes do not apply to ordinances." *See Barton v. Incorporation of Gadsden,* 79 Ala. 495, 496 (1885) (state saving statute "does not apply to the ordinances of municipal corporations, but solely to laws enacted by the General Assembly"); *Spears v. County of Modoc,* 101 Cal. 303, 307, 35 P. 869, 870–871 (1894); *Naylor v. The City of Galesburg,* 56 Ill. 285, 287 (1870) (state saving statute "applies solely to statutes enacted by the legislature, and not to the laws of a corporation; and we cannot

extend its operation to ordinances"); *East Lake Lot Own. Assoc. v. Town of Prin. Lakes,* 246 Ind. 333, 334, 205 N.E.2d 821, 821–822 (1965); *Rutherford v. Swink, supra,* 96 Tenn. at 568, 35 S.W. at 555 (saving statute "was only intended to apply to the statutes of the State, and . . . the common law rule still applies . . . to the repeal of municipal ordinances"); *Pleasant Grove City v. Lindsay,* 41 Utah 154, 162, 125 P. 389, 392 (1912) ("it has universally been held by the courts that such provisions were not intended to have, and do not have, any application to municipal ordinances, or to any proceeding instituted under them"); 6 McQuillin, *The Law of Municipal Corporations, supra,* § 21.44 at 370 ("[c]ontrary to the statutory rule as to state offenses, generally the repeal of an ordinance pending a prosecution under it operates to stop the prosecution and to release the defendant, unless it is otherwise provided in the repealing ordinance"); 1 Mathews, *Municipal Ordinances,* § 25.03 at 245 (2d ed. 1991 Revision) ("[a] repealing ordinance should always provide a reservation to the effect that such repeal should not have any effect on existing litigation and shall not operate as an abatement of any action or proceeding then pending under or by virtue of the repealing ordinance. Unless of course, it is the desire of the legislative body to cancel all existing prosecutions that may be pending under the repealed ordinance").

Baltimore City Ordinance No. 447 (1994) does not contain a reservation or a saving clause to the effect that proceedings under former § 249 should be preserved despite the repeal. *See East Lake Lot Own. Assoc. v. Town of Prin. Lakes, supra,* 246 Ind. at 334, 205 N.E.2d at 822 ("[i]t appears necessary then to enact a saving clause in each repeal of an ordinance to preserve proceedings dependent on the repealed ordinance"); *Cf. City of Rochester v. Crittenden P.R. Academy, Inc.,* 135 Misc. 451, 452, 238 N.Y.S. 215, 215 (N.Y.Sup.Ct.1930) ( prosecution under repealed ordinance proper where repealing ordinance provided "for the repeal of the existing ordinance, except as to offenses committed thereunder which 'may be * * * prosecuted * * * as fully and to the same extent as if such repeal had not been effected' "). Nor is this Court aware

of any general saving provision applicable to ordinances either in state law or in the Baltimore City Code or in the Baltimore City Charter. Therefore, the repeal of former Art. 19, § 249, operated as an abatement of the proceedings against Miles for violation of that section. It is an alternative ground requiring that his aggressive panhandling conviction be vacated.[4]

*JUDGMENT OF THE COURT OF SPECIAL AP-PEALS AFFIRMED IN PART AND VACATED IN PART, AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO AFFIRM THE JUDGMENT ON THE CHARGE OF BATTERY AND TO VACATE THE CONVICTION ON THE CHARGE OF AGGRESSIVE PANHANDLING. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE DIVIDED EQUALLY BETWEEN THE PETITIONER AND THE MAYOR AND CITY COUNCIL OF BALTIMORE.*

---

4. Moreover, even if there were a general saving statute applicable to penal ordinances enacted by the Mayor and City Council of Baltimore, it is not at all clear that a saving statute, employing the standard language of such statutes, would apply under circumstances like those in the case at bar. The typical situation contemplated by saving statutes is where the legislative body, for policy reasons, or for style, technical corrections, code organization, or similar reasons, itself decides to repeal or revise a statute or to repeal and reenact a statute with amendments. When the legislative body repeals a penal statute because of its belief that the statute is invalid, and that a conviction under the statute would be invalid, it is unlikely that the legislation body intends to "save" such "invalid" penalties. In the present situation, the United States District Court held former Art. 19, § 249, invalid on grounds that would have precluded Miles's conviction under that ordinance; the Mayor and City Council of Baltimore acquiesced in that holding of invalidity and, in lieu of an appeal, decided to repeal the "invalid" statute. It is doubtful that typical saving statutes are intended to cover this situation.