736 A.2d 285

Mohammed MOOSAVI

v.

STATE of Maryland.

No. 24, Sept. Term, 1998.

Court of Appeals of Maryland.

Aug. 30, 1999.

Nancy S. Forster, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Emmet Davitt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW *, RAKER, WILNER and CATHELL, JJ.

ELDRIDGE, Judge.

We granted a petition for a writ of certiorari in this case to determine whether the petitioner, Mohammed Moosavi, was properly convicted under Maryland Code (1957, 1996 Repl. Vol.), Article 27, § 151A, which punishes the transmittal of false statements or rumors about the location or detonation of a bomb or explosive.

---

* Chasanow, J., now retired, participated in the hearing of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

## I.

The evidence at Moosavi's trial in the Circuit Court for Frederick County disclosed the following facts. Moosavi, a retired elementary school teacher, had a credit card account with Chevy Chase Bank. Moosavi disputed a charge on his credit card for $30 membership dues to Columbia House Video. Evidently, he paid $30 for a three year membership in Columbia House Video, but the club canceled his membership after only three months. He wrote a letter to the bank dated July 14, 1995, detailing his dispute. Apparently, when he heard nothing from the bank, he contacted someone at the bank. Next, in an August 3, 1995, letter to Moosavi, the Chevy Chase Bank charge back department claimed that it did not receive his July 14th letter. Moosavi was told that he would have to write another letter, which he did, dated August 28, 1995.

Moosavi also telephoned the bank in regard to the disputed charge. He called the bank three times on August 30, 1995. When the customer service representative told Moosavi that he would have to send a detailed letter in order to have his disputed charge resolved, he refused and then asked to speak to a supervisor. He was transferred to Rona Bowers, the supervisor of the credit card division. Bowers testified that Moosavi was "irate" and "very angry" about the "procedure that the customer service representative told him he needed to follow in order to have a dispute resolved from his Chevy Chase account." Bowers further testified:

"A. He just started stating that he—he kept insisting that he wanted the charges taken off of his account. I explained to him in order for that to happen—I repeated myself—

Q. Uh-huh.

A. In order for that to happen, you must submit the documents. He began—he was very angry and somewhere in the conversation, that's when he began to state that he would blow up Chevy Chase Bank if we didn't do what he wanted him to—what he wanted done.

Q. Okay. Did he tell you where he was going to blow up the bank?

A. He asked—he stated, I'm going to blow up the bank. Well, I'm going to blow up Chevy Chase Bank. Where are you? In Frederick?

Q. And then—

A. And I asked him, well when would you blow up the bank? And he said probably on a Sunday."

Bowers then contacted the Chevy Chase Bank security department and informed someone in the department of Moosavi's statement. Moosavi denied ever making the statement to Bowers about blowing up the bank. The Chevy Chase Bank building in Frederick, Maryland, was not bombed.

Assistant State's Attorney Theresa Martinez Rivera testified that Moosavi came into her office without an appointment sometime in mid-October 1995. She advised Moosavi, who was not then represented by an attorney, that he needed a defense attorney and that he should not discuss the matter with her because she was a prosecutor. Despite her repeated efforts to discourage Moosavi from speaking with her about the matter, she said that "he just kept telling me, you know, it's the bank's fault because he—there was a discrepancy in their account, and that he was—the reason why he called in the bomb threat was because he was very—he was very angry with the bank." The administrative assistant in the State's Attorneys Office, Ginger Fogle, was present during the conversation between Moosavi and Rivera and stated that she heard Moosavi say "well, it's just all a big mistake, I didn't mean what I said, I didn't mean it when I said I was going to blow the building up, I was just mad." Moosavi denied ever making these statements to Rivera.

Moosavi was charged under Code (1957, 1996 Repl.Vol.), Article 27, § 151A, which provides as follows:

"151A. False statement or rumor as to bomb.

A person is guilty of a misdemeanor if, knowing the statement or rumor to be false, he circulates or transmits to another or others, with intent that it be acted upon, a

statement or rumor, written, printed, or by word of mouth, concerning the location or possible detonation of a bomb or other explosive."

\* \* \*

A jury trial was held on October 21 and 22, 1996, in the Circuit Court for Frederick County. At the conclusion of the State's evidence, Moosavi, by his counsel, made a motion for judgment of acquittal. He argued that the alleged criminal statement was not covered by § 151A. Instead, Moosavi asserted that if this statement was punishable at all, it was more appropriately covered by Code (1957, 1996 Repl.Vol.), Article 27, § 9, which states as follows:

" § 9. Threats of Arson.

(a) *In general.*—A person may not threaten either verbally or in writing to:

(1) Set fire to or burn a structure; or

(2) Explode a destructive explosive device ... in, on, or under a structure."

\* \* \*

In support of his motion, Moosavi's attorney argued that

"151A is—a person is guilty of a misdemeanor if, knowing the statement or rumor to be false, he circulates it, or transmits to another, or others, with the intent that it be acted upon. A statement, or rumor, written, printed, or by word of mouth concerning the location or possible detonation of a bomb or other explosive. It's very precise. If my client did threaten to explode a device, he'd be subject by [§ 9], which makes it very clear—a person may not threaten either verbally, or in writing, to explode an—a destructive explosive device.... That's the matter that we have according to the State's case. But 151A makes it—a part of this is that knowing the statement or rumor to be false, circulating that, transmitting that.... There has been no evidence whatsoever that this was knowingly false—knowing at the time that it was made that it was knowingly false. And that's part of this case. That's part of this charge. That's part of this offense.... And that's unmistakably

part of 151A. It—it fits very well within [§ 9], but he's not charged with that."

The circuit court denied the motion for judgment of acquittal.

At the conclusion of all of the evidence in the case, Moosavi again made a motion for judgment of acquittal, asserting that the evidence was insufficient to convict him under § 151A. He renewed the argument that the alleged offense, making a threat to explode a bomb, is more appropriately covered by § 9 than by § 151A. The court again denied the motion for judgment of acquittal. The jury found Moosavi guilty of making a false statement as to a bomb. The court sentenced him to thirty days in jail, suspended the sentence, and imposed two years of unsupervised probation.

Moosavi appealed his conviction to the Court of Special Appeals. He argued, *inter alia*, that the evidence was insufficient to sustain the guilty verdict because "[u]nder § 151A, the specific intent to have the threat acted upon is a required element of the crime." (Moosavi's brief in the Court of Special Appeals at 6). Moosavi contended that this intent requirement "is obviously included in the statute to prevent spontaneous, obviously idle statements such as the one alleged in the instant case from being charged as serious bomb threats." (*Ibid.*).

The Court of Special Appeals affirmed Moosavi's conviction, holding that the evidence of intent was sufficient. *Moosavi v. State*, 118 Md.App. 683, 703 A.2d 1302 (1998). Despite its own misgivings about the evidence with regard to intent, the Court of Special Appeals held that it would not interfere with the "exclusive prerogative of the fact finders" to "permissibly" infer that Moosavi "meant to do exactly what he said he was going to do." 118 Md.App. at 688, 691, 695, 703 A.2d at 1305, 1306, 1308.[1]

---

1. The Court of Special Appeals' opinion stated (118 Md.App. at 688, 703 A.2d at 1305):

"Had the three judges on this appellate panel been called upon, hypothetically, to render a verdict based on our view of the evidence, we acknowledge freely, albeit completely immaterially, that we would

Nevertheless, the Court of Special Appeals stated that, for another reason, it would have found the evidence to be legally insufficient with respect to the crime charged under § 151A had Moosavi raised the issue on appeal. The appellate court explained (118 Md.App. at 700, 703 A.2d at 1310):

> "151A was not even of the type of offense arguably perpetrated by the appellant. There was no false statement or rumor already in existence that he knew to be false and that he circulated to others with the intent that the Chevy Chase Bank, for instance, be evacuated. That is the type of thing that is meant by § 151A's 'with the intent that [the false rumor] be acted upon.' The evidence simply did not fit the crime charged (§ 151A) and, therefore, was legally insufficient to support the conviction."

The Court of Special Appeals concluded that the "gravamen of § 151A is the passing on or the transmitting of a false report or a false rumor with respect to the existing location and/or the possible detonation of an existing bomb." 118 Md.App. at 697–698, 703 A.2d at 1309. The appellate court stated that clearly "§ 151A does not involve the actual making of a threat by the would-be perpetrator to explode a bomb at some future time." *Ibid.* Rather, the purpose of § 151A, according to the Court of Special Appeals, is to target

> "the malicious prankster who perpetrates expensive and disruptive hoaxes in the form of bomb scares. The social harm, in addition to the very real fear engendered, is the hundreds and thousands of man hours that are lost as schools, office buildings, and courthouses are evacuated, with hundreds of employees forced to stand idly on the street while the Bomb Squad scans a building in vain." 118 Md.App. at 698, 703 A.2d at 1309–1310.

---

not have been persuaded beyond a reasonable doubt that the appellant was guilty of anything. We would not have been so persuaded even by the clear and convincing standard of persuasion. We would not have been so persuaded even by a bare preponderance of the evidence."

In contrast, the Court of Special Appeals stated that § 9 punishes threats whether or not "the maker of the threat actually intended to carry out the threat or made a false threat without the remotest intention of carrying it out. It is the making of the threat itself, whether it be true or false, that is the gravamen of the offense." 118 Md.App. at 697, 703 A.2d at 1309. The court indicated that the evidence in this case may have supported a conviction under § 9. The intermediate appellate court, however, ruled that Moosavi waived this argument because he did not raise the issue in his appellate brief.[2]

Moosavi filed a petition for a writ of certiorari which this Court granted. *Moosavi v. State,* 349 Md. 237, 707 A.2d 1330 (1998). The questions presented in his petition were as follows:

"I. Has Petitioner been denied meaningful appellate review by the refusal of the Court of Special Appeals to reverse a conviction for which it found the evidence to be insufficient but held that the issue was not preserved when, in fact, it was preserved?

"II. Is the evidence insufficient to convict Petitioner?"

## II.

At every stage of this case, Moosavi has argued that there was insufficient evidence to establish a violation of § 151A. In the trial court, Moosavi broadly argued, *inter alia,* that there was insufficient evidence to show that he knowingly made a false statement concerning the location or possible detonation of a bomb or other explosive, and that, if his statement was punishable at all, it was punishable as a threat to explode a structure under § 9. On appeal, however, he did not contend that § 151A was inapplicable to the type of conduct in which

---

2. There was no oral argument before the Court of Special Appeals. That court stated that Moosavi "waived" oral argument. *Moosavi v. State,* 118 Md.App. 683, 700, 703 A.2d 1302, 1310. Moosavi asserts, however, that the case "was placed on the summary docket by the Court of Special Appeals and not at appellate counsel's suggestion or request." (Petitioner's petition for a writ of certiorari at 9, n. 4). In this connection, *see* Maryland Rule 8–523(b).

he engaged. Instead, Moosavi made the more narrow argument that the evidence was insufficient because it failed to show that he intended for his statement to be acted upon.

The Court of Special Appeals correctly observed that these are two different sufficiency arguments. Each focuses upon different elements of the statute. The first argument is that § 151A does not embrace the type of conduct here involved. It concerns the basic statutory requirements that one circulate or transmit a "statement or rumor," knowing it to be false, "concerning the location or possible detonation of a bomb or other explosive." The second argument, made by Moosavi on appeal, is much more narrow and concerns the statutory requirement that the defendant have the "intent that [the statement] be acted upon. . . ." The first argument met the general preservation requirement set forth in Maryland Rule 8–131(a) because Moosavi clearly raised the issue in the trial court.[3] On the other hand, as pointed out by the Court of Special Appeals, Moosavi failed to raise the first argument in his Court of Special Appeals' brief.

As recently pointed out by Judge Wilner for this Court in *DiPino v. Davis*, 354 Md. 18, 56, 729 A.2d 354, 374 (1999), "if a point germane to the appeal is not adequately raised in a party's brief, the [appellate] court may, and ordinarily should, decline to address it." *See also, e.g., Ritchie v. Donnelly*, 324 Md. 344, 375, 597 A.2d 432, 447 (1991) (the Court of Special Appeals, in its "discretion," need not have "considered the arguments" which where not made in the appellant's brief); *Health Serv. Cost Rev. v. Lutheran Hosp.*,

---

3. Maryland Rule 8–131(a) provides as follows:

"**RULE 8–131. SCOPE OF REVIEW**

(a) *Generally.* The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal."

298 Md. 651, 664, 472 A.2d 55, 61 (1984) ("a question not presented or argued in an appellant's brief is . . . not properly preserved for review"). Nonetheless, in a case where arguments are not made in an appellant's brief, the "Court of Special Appeals . . . could have, in its discretion, considered the arguments," *Ritchie v. Donnelly, supra,* 324 Md. at 375, 597 A.2d at 447.

■ When an appellate court does exercise its discretion to address and consider an argument which was not made in the appellant's brief, and when the appellate court resolves that issue in the appellant's favor, it is ordinarily inappropriate for the appellate court then to refuse to give the appellant the benefit of its ruling because of the failure to preserve the issue. *See DiPino v. Davis, supra,* 354 Md. at 57, 729 A.2d at 375 ("To affirm that judgment after finding that it had no legal basis was inappropriate").

■ In the case at bar, the Court of Special Appeals exercised its discretion to consider and rule upon an argument which Moosavi had advanced at trial but had failed to make in his appellate brief. Under the circumstances, the Court of Special Appeals should not have refused to give Moosavi the benefit of its ruling on the ground that the issue was not preserved for appellate review.

■ There are additional reasons why we shall consider the broad issue of whether Moosavi's conduct, as show n by the evidence in the case, falls within the prohibition of § 151A. As Judge J. Dudley Digges pointed out for the Court in *Squire v. State,* 280 Md. 132, 134–135, 368 A.2d 1019, 1020 (1977), the Court of Special Appeals and this Court each have "independent discretion" to excuse the failure of a party to preserve an issue for appellate review. Two different circumstances, both present in the case at bar, warrant this Court's exercise of its discretion to rule upon the applicability of § 151A to Moosavi's conduct.

First, if § 151A is clearly inapplicable to Moosavi's conduct, and if the only reason for not reversing his conviction is the

failure of appellate counsel to raise the issue in the Court of Special Appeals, under the circumstances of this case Moosavi would be entitled to relief in an appropriate post conviction proceeding collaterally attacking his conviction. In light of this, fairness and interests of judicial economy justify granting relief on direct appeal. *See, e.g., State v. Evans*, 278 Md. 197, 211, 362 A.2d 629, 637 (1976), where Chief Judge Murphy for the Court pointed out that, although the trial court's errors were not preserved for appellate review, since the "errors were subject to collateral attack under [the Post Conviction Procedure Act] in any event," the appellate court was justified "to recognize them on its own motion. . . ." *See, e.g., Franklin v. State*, 319 Md. 116, 122, 571 A.2d 1208, 1210–1211 (1990); *Walczak v. State*, 302 Md. 422, 427, 488 A.2d 949, 951 (1985) ("because the defendant would be entitled to post conviction relief ... although [the error was] not objected to at trial, interests of expedition and judicial economy support review of the [alleged error] on direct appeal").

Second, where a defendant has been charged and convicted under an entirely inapplicable statute, but has not raised the issue on appeal, this Court has reviewed the issue on the theory that the resulting sentence under the inapplicable statute is an illegal sentence which may be challenged at any time. In *Campbell v. State*, 325 Md. 488, 601 A.2d 667 (1992), the Court considered the issue of whether the defendant Campbell had been charged under the wrong statute even though the issue had never previously been raised. Judge Bell for the Court explained (325 Md. at 508–509, 601 A.2d at 677):

> "The paraphernalia counts, charging possession of 'numerous smoking pipes, adapted for administration of controlled dangerous substance under circumstances which reasonably indicate an intention to use for purpose of illegally administering controlled dangerous substance ...,' were brought pursuant to Article 27, § 287(d). Although the petitioner does not raise the issue, it is quite obvious that § 287(d) does not apply and, so, as to the count of which he was convicted, the petitioner received an illegal sentence.

Illegal sentences may be challenged at any time, even on appeal. Rule 4–345(a); *Matthews v. State*, 304 Md. 281, 288, 498 A.2d 655, 658 (1985), citing to *Walczak v. State*, 302 Md. 422, 427, 488 A.2d 949, 951 (1985).

"Section 287(d)(1) defines 'controlled paraphernalia' as it pertains to its use, rather than its packaging (*see* subsection (d)(2)) or its preparation (*see* subsection (d)(3)), as '[a] hypodermic syringe, needle or other instrument or implement or combination thereof adapted for the administration of controlled dangerous substances by hypodermic injections. . . .' The 'numerous smoking pipes' referred to in the paraphernalia counts simply do not come within that definition. The petitioner should have been charged under Article 27, § 287A(a), which defines 'drug paraphernalia' as: 'all equipment, products, and materials of any kind which are used, intended for use, or designed for use, in . . . ingesting, inhaling or otherwise introducing into the human body a controlled dangerous substance. . . .' "

For all of the above-discussed reasons, we shall address the broad issue of whether Moosavi's conduct was encompassed by Art. 27, § 151A.

### III.

Like the Court of Special Appeals, we conclude that Moosavi was charged and convicted under the wrong statute. The plain statutory language and legislative history of Art. 27, § 151A, and Art. 27, § 9, demonstrate that § 151A does not encompass Moosavi's conduct, and that he should have been charged, if at all, under § 9.

The crux of the offense under § 151A is the transmittal or circulation of a statement or rumor, knowing the statement or rumor to be false, and intending that it be acted upon, "concerning the location or possible detonation of a bomb or other explosive." The statute, by its plain language, is aimed at those telephoning, mailing, or otherwise transmitting *false* bomb scare *rumors* or *statements*, intending to create havoc

by, for example, having buildings evacuated and police bomb squads summonsed.

Section 9, on the other hand, provides that "a person may not *threaten* ... to: (1) Set fire to or burn a structure; or (2) Explode a destructive explosive device ... in, on, or under a structure." (Emphasis supplied). Section 9 is obviously the statute aimed at persons who threaten to blow up buildings.

As a matter of plain English, there is a distinction between a statement that "there is a bomb in the building" and a statement, such as Moosavi's, that "I'm going to blow up the [building]." The latter falls within the purview of § 9's prohibition of threats to "[e]xplode a destructive explosive device...." That Moosavi was charged with § 151A ignores the clear difference between the commonly understood meaning of the words "false statement or rumor" and the plain meaning of the word "threat."

The term "false statement" encompasses statements which are "knowingly false," and made "with purpose to mislead or deceive." BLACK'S LAW DICTIONARY at 602 (6th ed.1990). A "rumor" is a "story passing from one person to another without any known authority for the truth of it." *Id.* at 1333. In contrast, a "threat" is a "communicated intent to inflict" harm. *Id.* at 1480. It defies common sense to view "false statements" and "rumors" as synonyms of "threats." An individual may truthfully threaten to explode a bomb in a building without making a false statement. Similarly, one may transmit a false statement or rumor that there is a bomb in a building without ever threatening, or communicating an intent, to explode a bomb.

Section 151A punishes the making of particular statements because they are false and extremely disruptive. Section 9 does not look to the truth or falsity of the statement; rather, it punishes statements which constitute communicated intentions to do harm. The statement by Moosavi that "I'm going to blow up the bank" is not a "false statement or rumor." It distorts the language and purpose of § 151A and § 9 to view it

as such. If anything, his statement suggests an intention or desire to inflict harm, *i.e.*, a threat.

In addition to the statutes' plain language, the legislative history indicates that § 151A is inapplicable to Moosavi's statement. There is no suggestion in the legislative history of § 151A and § 9 that the General Assembly intended bomb threats to be punishable under § 151A. When § 151A was first enacted by Ch. 395 of the Acts of 1963, the Title indicated that the purpose was to punish "False Statements" knowingly made concerning the location of a bomb or explosive. In contrast, § 9 was introduced to address an increasing number of arson threats. What is now § 9 was first enacted by Ch. 494 of the Acts of 1989.[4] The Department of Legislative Reference's bill file on Ch. 494 discloses that the Maryland Chiefs of Police Association, the Baltimore City Police Department and the Maryland Sheriffs' Association had urged the General Assembly to enact § 9 because they often found that, in the investigation of arson, "the crime of arson was committed after the occupants of the house were *threatened* with having their house burned down." (Emphasis added). Ch. 494 of the Acts of 1989, when it was first introduced as Senate Bill 645, did not initially include a provision relating to bomb threats. During the course of passage, the bill was amended to include threats to "[e]xplode a destructive explosive device . . . in, on, or under a structure." The General Assembly intended specifically to prohibit threats of bombing as well as threats of arson.

In 1991, both § 151A and § 9 were amended by a single enactment in order to enhance the penalties. Ch. 166 of the Acts of 1991. The bill file on Ch. 166 indicates that the amendments were a response to complaints from the Maryland Association of Boards of Education and others about the rash of bomb scares in the schools. In the 1990–1991 school year, for example, the Washington County public schools received 23 false bomb scares resulting in lost instructional

---

4. When first enacted, Art. 27, § 9, was numbered Art. 27, § 7A.

time for students, lost wages, and police investigations. When Ch. 166 was first introduced as House Bill 239, it would have enhanced only the penalties of § 9. The Legislature, however, realizing that false bomb scares are more appropriately within the coverage of § 151A, added amendments to the penalty provisions of § 151A as well. The Title of House Bill 239, when it was first introduced and related only to § 9, read as follows:

"AN ACT concerning

**Bomb Threats and Arson Threats**

FOR the purpose of establishing an additional penalty for certain bomb and arson threats; and generally relating to penalties for bomb and arson threats."

\* \* \*

The amended Title of House Bill 239, after it was amended to enhance the penalties under § 151A as well, read as follows:

"AN ACT concerning

**Bomb** ~~**Threats**~~ **and Arson Threats** *and False Statements Regarding Bombs—Penalties*

FOR the purpose of establishing an additional penalty for certain bomb and arson threats; *increasing the fine for certain false statements or rumors regarding bombs;* and generally relating to penalties for bomb and arson threats, *and certain false statements or rumors regarding bombs."*

\* \* \*

The above-reviewed legislative history shows that the General Assembly was well aware of the difference between making a bomb threat and making a false statement about the location of a bomb. The former was encompassed by § 9 and the latter by § 151A.[5]

---

**5.** Although we generally agree with the Court of Special Appeals' interpretation of Art. 27, § 151A, in one respect we disagree with the intermediate appellate court's view of the statute. Some language in the Court of Special Appeals' opinion reflects the court's belief that, under § 151A, the prohibited false statement or rumor must be a

In the case at bar, the State charged Moosavi under the wrong statute. We shall order that his conviction be reversed.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY FREDERICK COUNTY.*

RODOWSKY and WILNER, JJ., dissent.

RODOWSKY, Judge, dissenting.

I join in Parts I and II of the Court's opinion. I write separately, however, because I respectfully disagree with the holding in Part III. In my opinion Article 27, § 9 is not the exclusive statute under which Moosavi could properly be charged.

The words of Article 27, § 151A embrace Moosavi's conduct. Focusing on the words of the statute that are relevant to the State's theory of the case and stripping the statute of language that describes other ways in which the crime can be committed, § 151A reads:

"A person is guilty of a misdemeanor if, knowing the statement ... to be false, he ... transmits to another ... with intent that it be acted upon, a statement ... concerning the ... possible detonation of a bomb...."

Moosavi certainly made a statement concerning the possible detonation of a bomb. A statement is "1: the act or process of stating, reciting, or presenting orally or on paper" and

---

preexisting statement or rumor, originating with a person other than the accused. *See Moosavi v. State,* 118 Md.App. 683, 700, 703 A.2d 1302, 1310 (1998) ("There was no false statement or rumor already in existence that he [Moosavi] knew to be false ..."). Neither the language of the statute nor its legislative history support the view that the false statement or rumor must be preexisting or must originate with someone other than the accused. Instead, the false statement or rumor may come into existence when the accused first transmits it to another.

"[2]b: a single declaration or remark." *Webster's Third New International Dictionary* 2229 (1976). Under the evidence most favorable to the State, Moosavi's statement was knowingly false because he had no intention actually to bomb the Bank. Further, Moosavi intended that the false statement be acted upon. The supervisor of the credit card division of the Bank, Rona Bowers, testified that Moosavi stated to her "that he would blow up Chevy Chase Bank if we didn't do . . . what he wanted done." The jury could find that the statement was intended to have the effect of forcing the Bank to credit Moosavi's account to offset the $30 charge.

The majority concludes that a false statement concerning the detonation of a bomb that is a threat is not embraced within the prohibition of § 151A because a threat to "[e]xplode a destructive explosive device . . . in, on, or under a structure" is expressly prohibited by § 9. *Moosavi,* 355 Md. at 665, 736 A.2d at 292. The issue before us, however, is not whether Moosavi could have been charged under § 9, but whether he was properly charged under § 151A. It does not follow that because one statute makes certain conduct criminal that another statute may not also make the same conduct criminal. Our jurisprudence is replete with illustrations of circumstances where the same conduct can constitute two crimes. *See, e.g., Miles v. State,* 349 Md. 215, 219–21, 707 A.2d 841, 843–45 (1998) (listing cases that address, *inter alia,* the merger of offenses for sentencing purposes).

As part of its analysis the majority has construed Article 27, § 9 from the intent standpoint. The Court says: "Section 9 does not look to the truth or falsity of the statement; rather, it punishes statements which constitute communicated intentions to do harm." *Moosavi,* 355 Md. at 664, 736 A.2d at 292. Under the majority's construction of § 9, § 151A, on the facts of this case, simply creates a crime that has at least two elements, falsity of the statement and the intent that it be acted upon, that are in addition to the required elements of § 9.

Further, the legislative history does not, in my view, demonstrate a legislative intent to exclude from the scope of § 151A a threat to explode a bomb which the maker has no intention of carrying out. Section 151A antedates § 9 by some twenty-six years, the former having been enacted by Chapter 395 of the Acts of 1963 and the latter by Chapter 494 of the Acts of 1989. Section 151A, since its inception, has addressed false statements about the detonation of a bomb. No provision in § 151A defines "another or others" to whom the false statement is transmitted as excluding the owner or occupant of the building or other place where a bomb is falsely stated to be detonated. Further, the majority opinion, in footnote 5, rejects the construction by the Court of Special Appeals of § 151A and concludes, as do I, that § 151A does not require that the false statement originate with a third person. In other words, the false statement may originate with the maker of the statement.

Thus, during the first twenty-six years of its existence, it would seem that the accused-originating scenarios to which § 151A might apply could fall into two general categories. First, the accused says, in effect, "I am going to detonate a bomb in your building," without any intent on the part of the accused to do so. Second, the accused says that a third party, either identified or unidentified, plans to detonate a bomb in the building of the person to whom the statement is transmitted and the accused knows that either there is no such third person or that the third person does not intend to do that act. Under the majority's construction, § 151A has never applied at any time to the first set of circumstances ("I am going to detonate a bomb in your building") because that is a threat. I find nothing in the language of § 151A that can support excluding that false threat from the false "statement" referred to in § 151A. Inasmuch as our jurisprudence is replete with instances in which the same conduct constitutes a crime under two statutes, I find unconvincing the argument that, because the later enacted statute expressly addressed bomb threats,

the earlier enacted statute should be construed as excluding bomb threats.[1]

There is no legislative history available on the original enactment of § 151A by Chapter 395 of the Acts of 1963. There is some legislative history available on Chapter 494 of the Acts of 1989, by which what is now § 9 was first enacted. As the majority points out, "the Maryland Chiefs of Police Association, the Baltimore City Police Department and the Maryland Sheriffs' Association had urged the General Assembly to enact § 9 because they often found that, in the investigation of arson, 'the crime of arson was committed after the occupants of the house were *threatened* with having their house burned down.' (Emphasis added)." *Moosavi*, 355 Md. at 665, 736 A.2d at 292. The bill enacting present § 9 was amended in the course of passage to add a proscription against threats to bomb. The majority infers from the 1989 legislative history that threats to bomb were being addressed for the first time. To me it is equally inferable that threats to bomb were added in 1989 because the police were encountering situations in which threats to burn were actually consummated, and the same could be the situation with respect to threats to bomb, but § 151A could not be the basis of prosecution where the threat to bomb was a genuine threat that the communicator intended to carry out. It is consistent with the known facts that the purpose of adding threats to bomb to § 9 was to fill the void created by the fact that it would be a defense to a charge under § 151A that the accused actually intended to bomb.

For these reasons I would affirm the judgment of the Court of Special Appeals.

---

1. By taking the position that the original intent of § 151A was to exclude threats from "statement[s]," the majority seeks, unconvincingly to me, to avoid saying that the later enacted statute partially repealed, as to threats, the earlier enacted statute. That would, of course, violate a cardinal rule of statutory construction "that repeals not express will not be found unless demanded by irreconcilability or repugnancy." *Harden v. Mass Transit Admin.*, 277 Md. 399, 407, 354 A.2d 817, 821 (1976).

Judge WILNER has authorized me to state that he joins in the views expressed herein.