31 A.3d 160

**Matthew TRACY**

v.

**STATE of Maryland.**

**No. 32, Sept. Term, 2010.**

Court of Appeals of Maryland.

Oct. 27, 2011.

2

Deborah Richardson, Asst. Public Defender (Paul B. De-Wolfe, Public Defender, and Geraldine K. Sweeney, Chief Atty., Baltimore, MD), on brief, for petitioner.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, *MURPHY, BARBERA, and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

---

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

MURPHY, J.

While Matthew Tracy, Petitioner, was incarcerated in the Western Correctional Institution, he wrote the following letter to Sheryl L. (Sheryl), a resident of Caroline County:

Sheryl,

   Look, you already know who I am, the reason I'm writing is because of your ex boyfriend, boyfriend who ever the nigga is. I've been sitting back hearing all that's going on and not saying a word. Now all the bullshit stops here with your ex. I've decided to write to you first instead of getting my people involved. I'm pretty sure you know who I run with. Don't get me wrong, I don't give a fuck about you, your man, or your family. All I care about is Marshall. Now to the point, If [sic] your man keeps talking shit to my brother he is then going to have a big problem with me and trust me—he nor you want that. Don't get it twisted don't think for a second that I can't do much because I'm in prison. I've got plenty of soldiers on the street ready to put in work. So all these games you little kids are playing stops at this. I'm gonna close with telling you that I don't give a damn who you show this letter to mom, Dad, police, who ever. It won't stop what I'm telling you. Everything will be fine as long as you and your man leaves my little brother *alone.* If not there will be no more words about this. Have a nice day and I hope you pick the right thing to do.

   *Matt*

(Emphasis in original). Below the signature was a triangle inside of which were the numbers 4–13–9.

Sheryl received Petitioner's letter on January 30, 2008, and turned it over to the State's Attorney for Caroline County. On February 8, 2008, in the District Court of Maryland for Caroline County, the State's Attorney filed a two count charging document that contained the following assertions:

*COUNT 1*
(Retaliate–Witness)
Penalty: 5 Years &/or $5,000.00

**4**

[The] State's Attorney for Caroline County, upon information, does present that **Matthew Wayne Tracy, on or about January 30, 2008** at or near 26927 Boyce Mill Road, Greensboro, Caroline County, Maryland, ... **did intentionally threaten to harm with the intent of retaliating against Sheryl [ ], a witness for giving testimony in an official proceeding,** contrary to **(Article CR, Section 9.303)** of the Annotated Code of Maryland, and against the peace, government and dignity of the State.

COUNT 2
(Intimidate/Influence Juror)

Penalty: 5 Years &/or $5,000.00

And the State's Attorney aforesaid, does further present that **Matthew Wayne Tracy, on or about January 30, 2008** at or near 26927 Boyce Mill Road, Greensboro, Caroline County, Maryland, ... **did by threat endeavor to influence and/or impede Sheryl [ ], a witness, in the discharge of her official duty,** contrary to **(Article CR, Section 9.305.(a))** of the Annotated Code of Maryland, and against the peace, government and dignity of the State.

(Emphasis in original). As a result of Petitioner's prayer for a jury trial, his case was transferred to the Circuit Court for Caroline County, where a jury convicted him of both charges. For the conviction on Count 1, the Circuit Court imposed a sentence of 5 years to the custody of the Commissioner of Correction, all of which was suspended. For the conviction on Count 2, the Circuit Court imposed a 4 year sentence to the custody of the Commissioner of Correction, consecutive to any sentence that Petitioner (1) was then serving, and (2) had received but was not yet serving. No portion of that sentence was suspended.

After the judgments entered on those verdicts were affirmed by the Court of Special Appeals in an unreported opinion, Petitioner filed a petition for writ of certiorari with this Court, in which he presented two questions for our review:

1. Is the evidence sufficient to support conviction under either statute?

2. Assuming *arguendo* that the evidence is sufficient, was it improper to convict Petitioner under both statutes for the single act of writing a letter suggesting a threat of harm if the witness gave harmful testimony in a pending case?

This Court granted the petition. 414 Md. 330, 995 A.2d 296 (2010).

For the reasons that follow, we shall affirm the holding of the Court of Special Appeals that the State's evidence was sufficient to establish that Petitioner violated § 9–305(a) of the Criminal Law Article. We shall also hold, however, that the threat, "I will have you harmed *if* you testify" is proscribed by CL § 9–302 rather than by CL § 9–303. We shall therefore reverse the judgment affirming Petitioner's conviction on Count 1. In light of these holdings, Petitioner's second question is moot.

### *Background*

The State's case against Petitioner included the following written STIPULATIONS OF FACT:

1) There were criminal charges filed on behalf of Sheryl [ ] against Marshall Ebling in the District Court of Maryland for Caroline County, Case No. 3J16341, on or about December 13, 2007. This case was disposed of by plea on February 11, 2008.

2) The Defendant, Matthew Tracy:

a) is Marshall Ebling's half-brother;

b) was incarcerated in the Western Correctional Institute, a facility of Maryland Department of Corrections, at all times pertinent to this case and specifically on January 28, 2008;

c) was at the time a validated member of the gang known as "Dead Man Incorporated" and bears a tattoo evidencing this status;

d) on or about December 28, 2007 wrote and mailed the letter at issue herein to Sheryl [ ] from the Western Correctional Institute;.

3) Detective Patrick Word is acknowledged as an expert on gangs and gang related activities.

The prosecutor's opening statement included the following assertions:

This whole case is about a letter. [Petitioner] is incarcerated in the Department of Corrections.... During the Fall of 2007 [Sheryl], who you saw earlier, and you will hear from, was dating [Petitioner's] half-brother, Marshall Ebling. That relationship ended badly on December 12th of 2007. As a result, of that bad ending, a criminal case was filed against Mr. Ebling in which [Sheryl] was the complainant and the victim. That case was resolved by Mr. Ebling's guilty plea on February 11, 2008. So the window of time we are dealing with is from December 12th through February 11, 2008. [Petitioner] wrote [Sheryl] a letter. You will get to read that letter. And that letter contains statements, again, which you will have in front of you in the jury room, which the State considers an attempt to intimidate or influence or impede [Sheryl's] participation in a criminal case against [Petitioner's] half brother. It also considers that letter a threat to retaliate against [Sheryl], if she goes forward with participating in the case against [Petitioner's] half brother. And that's what this case is about. That letter. So please pay attention to that. That case that I was referring to was filed on December 13th, 2007, the day after the fight that broke up the relationship between Mr. Ebling and [Sheryl]. The letter that you are going to see is dated January 3rd, I'm sorry, December 28th, 2007, two days later, and before the trial date in February of 2008. And that's really .... at this point that's all I can tell you. That's what you are going to have to focus on, that letter and the testimony from the witnesses here. And its your judgment as to whether that letter was a threat to retaliate, or an attempt to influence [Sheryl].

(Emphasis supplied).

The jury received undisputed evidence that Ebling had been arrested after Sheryl notified the police that he had broken

her car's windshield, and the criminal charges arising out of that incident were scheduled for trial on February 11, 2008. Sheryl testified that, in January of 2008, Ebling told her that she would be "getting a letter." Ebling testified that (1) no such conversation took place, (2) he had never told Petitioner about his upcoming trial, and (3) in a telephone conversation, he had told Petitioner about threats he had received from a neighbor named "Joey." According to Ebling, Petitioner wrote the letter to put a stop to those threats.

The following transpired during Detective Word's direct examination:

Q: Now, Detective Word, you are familiar with [the above quoted letter] marked Exhibit 1A earlier?

A: I am. Yes, I am.

\* \* \*

Q: ... Detective going through the letter from top to bottom, can you identify areas which you perceive to be gang-related or ...

\* \* \*

A. I do, actually there are several that I've had a chance to review and make notes on.

Q: Okay. Let's deal with the ... in line items. I'll direct your attention to the sentence I've decided to write to you first instead of getting my people involved.

A: Correct.

Q: Now, reference to my people, what would, based on your experience and knowledge of gang activities, what would that be in reference to?

A: My opinion is, and based on my experience, that that would be a reference to his particular gang which is DMI.

Q: And further down the letter, the reference in the words you know who I run with.

A: Yes, also another reference to his gang, DMI.

Q: Further down from that, and Your Honor, I apologize to the jury in Court in advance, but I am going to read this verbatim. I don't give a fuck about you, your mom, or your

family. All I care about is Marshall. That focuses on the specific individual?

A: It ... it does.

Q: Further down, don't get twisted. Don't think for a second that I can't do much because I am in prison. I've got plenty of soldiers on the street ready to put in work.

                    *        *        *

A: Put in work is definitely a gang reference.

                    *        *        *

Q: I think the question, Detective was specifically ready to put in work is a reference to one member asking another to do a specific action?

A: That's correct.

Q: And there are no limitations on that action?

A: No, there are not.

Q: Then, subsequent to that, so all these games you little kids are playing stops at this. Is that consistent with the language that went before in terms of requiring a specific action?

A: My Opinion based on my experience, yes, it is.

Q: Subsequent to that, I am going to close by telling you that I don't give a damn who you show this letter to mom, dad, police, whoever, it won't stop what I am telling you.

A: Also a specific gang reference relating back to the putting in work and the uh, threatening nature of the letter.

                    *        *        *

Q: Further down, everything will be fine as long as you, and your man leaves my little brother alone. If not, there will be no more words about this. I hope you picked the right thing to do.

A: That's correct, also, very, based on my opinion and experience, also goes to the threatening nature.

The following transpired during Detective Word's cross-examination:

Q: If ... if Mr. Tracy was acting so lawlessly, and I remember the DMI as you had ... Dead Man Incorporated, why wouldn't he just come out and say don't testify against my brother?

A: Well, I can't answer I don't know what was in his mind when he wrote this. Reading it on its face, he is a DMI member, he's self-admitted to DMI. Actually, if he's not threatening somebody, he's ... he's publicly proclaiming that he is DMI. And he's certainly at risk of violating DMI rules if he comes into Court and either denounces, or through a letter denounces any of his membership. It's the threatening nature of the letter which, in my opinion is, shows that he is ... is operating within the gang rules.

Q: Well, what I am saying is, wouldn't he just make a threat? I mean it's ... it's pretty innocuous as a threat. Wouldn't he say I want you to do X or stop doing X?

A: I can't say ... I can't testify as to why he didn't use those ... those specific words, other than the fact that most correctional inmates know that their mail is reviewed and scanned, and if a corrections officer didn't pick this up or see this as a threat, doesn't necessarily mean that it's not a threat. A lot of their mail is ... is coded, and information that goes to the outside to other gang members, or to somebody who is receiving an intimidating or threatening letter would be coded. And sometime's it's difficult for correction officers on the inside to necessarily pick up those codes. Law enforcement professionals and other corrections intelligence officers are able to pick up those coded messages, decode them, and provide that information either to investigators or prosecutors.

As noted above, the jury convicted Petitioner of both Count 1 and Count 2.

### Discussion

■ The State's case against Petitioner proceeded on the theory that, by writing the above quoted letter to Sheryl, Petitioner intended to in essence "chase her off the witness stand." Petitioner's argument that the evidence was insuffi-

cient to prove that theory is controlled by *Smith v. State*, 415 Md. 174, 999 A.2d 986 (2010), in which this Court affirmed a possession of marijuana conviction. In that case, officers executing a search warrant—at a residence of another person—found the petitioner and four other individuals seated at a table in the center of which was an ashtray that contained a burning marijuana "blunt." While rejecting the petitioner's arguments that his "mere presence" in the vicinity of the blunt was insufficient to establish beyond a reasonable doubt that he exercised any "dominion or control over the blunt," this Court stated:

> We stated in *State v. Smith*, 374 Md. 527, 534, 823 A.2d 664, 668 (2003), that the finder of fact has the "ability to choose among differing inferences that might possibly be made from a factual situation...." That is the fact-finder's role, not that of an appellate court. Professor Douglas Lind explains that "[t]he term 'inference' refers to the logical process that takes place when, within the context of a group of propositions (i.e., an 'argument'), one proposition (the 'conclusion') is arrived at and affirmed on the basis of other propositions (the 'premises') that are accepted at the beginning point of the process." Douglas Lind, *Logic and Legal Reasoning* 4–5 (2001). In other words, "[a]n inference is a factual conclusion that can rationally be drawn from other facts." Clifford S. Fishman, *Jones on Evidence* § 4:1 (7th ed. 1992 & Supp.2009–2010). "If fact A rationally supports the conclusion that fact B is also true, then B may be inferred from A." *Id.*
>
> We do not second-guess the jury's determination where there are competing rational inferences available. We give deference "in that regard to the inferences that a fact-finder may draw." *Smith*, 374 Md. at 534, 823 A.2d at 668. In *Smith*, we relied on language from a Washington case, *State v. Bencivenga*, 137 Wash.2d 703, 974 P.2d 832 (1999), where evidence of a defendant's intent was at issue. The Washington Supreme Court opined that
>
>> [n]othing forbids a jury, or a judge, from logically inferring intent from proven facts, so long as it is satisfied

that the state has proved that intent beyond a reasonable doubt. An essential function of the fact finder is to discount theories which it determines unreasonable because the finder of fact is the sole and exclusive judge of the evidence, the weight to be given thereto, and the credibility of witnesses.

*Id.* at 834–35 (citations omitted). We need not decide whether the jury could have drawn other inferences from the evidence, refused to draw inferences, or whether we would have drawn different inferences from the evidence. *Smith*, 374 Md. at 557, 823 A.2d at 682.

Accordingly, the proper standard of review to be applied here is that set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), where the U.S. Supreme Court stated that "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction ... is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318–19, 99 S.Ct. at 2788–89, (emphasis in original). *See also Allen v. State*, 402 Md. 59, 76–77, 935 A.2d 421, 431 (2007) ("[W]e review a challenge to the sufficiency of the evidence in a jury trial by determining whether the evidence, viewed in a light most favorable to the prosecution, supported the conviction ..., such that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."); *Smith*, 374 Md. at 533, 823 A.2d at 668 (2003) ("The standard for appellate review of evidentiary sufficiency, is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."); *Moye* [*v. State*], 369 Md. [2] at 12, 796 A.2d [821] at 827 (2002) ("The standard for appellate review of evidentiary sufficiency is whether any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt."); *State v. Albrecht*, 336 Md. 475, 478, 649 A.2d 336, 337 (1994) (citations omitted) ("[W]e review the evidence in

the light most favorable to the State, giving due regard to the trial court's finding of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses.").

It is not our role to retry the case. *Allen,* 402 Md. at 77, 935 A.2d at 431; *Taylor* [*v. State*], 346 Md. [452] at 457, 697 A.2d [462] at 465 [(1997)]. Because the fact-finder possesses the unique opportunity to view the evidence and to observe first-hand the demeanor and to assess the credibility of witnesses during their live testimony, we do not re-weigh the credibility of witnesses or attempt to resolve any conflicts in the evidence. *Tarray v. State,* 410 Md. 594, 608, 979 A.2d 729, 737 (2009); *Smith,* 374 Md. at 533–34, 823 A.2d at 668. We defer to the jury's inferences and determine whether they are supported by the evidence. *Id.* at 557, 823 A.2d at 682.

That standard applies to all criminal cases, regardless of whether the conviction rests upon direct evidence, a mixture of direct and circumstantial, or circumstantial evidence alone. *Smith,* 374 Md. at 534, 823 A.2d at 668.

*Id.* at 183–5, 999 A.2d at 990–92.

As to Petitioner's argument that his letter *might* have been written with the intent to protect his half brother from harassment rather than with the intent to torpedo a pending criminal case, in *Dixon v. State,* 302 Md. 447, 455, 488 A.2d 962 (1985), this Court quoted with approval the following "sufficiency" analysis set forth in *Cooper v. State,* 220 Md. 183, 152 A.2d 120 (1959):

The question is not whether we *might* have reached a different conclusion from that of the trial court, but whether the trial court had before it sufficient evidence upon which it could fairly be convinced beyond a reasonable doubt of the defendant's guilt of the offense charged[.]

*Id.* at 192, 152 A.2d at 124. (Emphasis in original).

The State's evidence was sufficient to prove beyond a reasonable doubt that Petitioner's letter was written with the intent to prevent Sheryl from testifying against his half broth-

er in the upcoming criminal case. We must therefore determine whether that conduct constituted a violation of CL § 9–303 and/or CL § 9–305. The statutes at issue in the case at bar are included in the *"Obstructing Justice"* subtitle (Subtitle 3) of the Criminal Law Article, and both were amended in 2005.

## CL § 9–305

Preventing "the due execution of justice, as by interfering with witnesses," was a common law misdemeanor. Lewis Hochheimer, *The Law of Crimes and Criminal Procedure*, § 398, p. 435 (2d ed., The Baltimore Book Company 1904). The first statute proscribing such conduct went "on the books" in 1853,[1] and has often been recodified without any substantial changes.[2] Since October 1, 2005, CL § 9–305 has, in pertinent part, provided:

§ 9–305. Intimidating or corrupting juror, states,

(a) Prohibited.—A person may not, by threat, force, or corrupt means, try to influence, intimidate, or impede a juror, a witness, or an officer of a court of the State or of the United States in the performance of the person's official duties.

(b) Penalty.—A person who violates this section is guilty of a misdemeanor and on conviction is subject to impris-

---

**1.** The following statute was enacted by Chapter 450, § 2 of the Acts of 1853:

... That if any person or persons shall corruptly, or by threats of force, endeavor to influence, intimidate or impede any juror, witness or officer in any court of this State, in the discharge of his duty, or shall corruptly or by threats of force, obstruct or impede, or endeavor to obstruct or impede the due administration of justice therein, every person or persons so offending shall be liable to be prosecuted therefore by indictment, and shall on conviction thereof be punished by fine not exceeding five hundred dollars; or by imprisonment not exceeding three months, or both, according to the nature and aggravation of the offence.

**2.** *See e.g.,* An.Code 1957, art. 27 § 26; 1951, § 33; 1939, § 30; 1924, § 33; 1912, § 30; 1904, § 28; 1888, § 25; 1972, ch. 555; 1981 ch. 274; 1993, ch. 223; 1994, ch. 712.

onment not exceeding 5 years or a fine not exceeding $10,000 or both.

A "witness," as that term is defined in CL § 9–301,[3] has an "official duty" to testify truthfully when he or she has been served with a subpoena issued under the authority of a court of this State.

The theory of Petitioner's case was that he did not write the letter with the intent "to influence, intimidate, or impede" Sheryl. The closing argument of Petitioner's trial counsel included the following comments:

I told you that this case would come down to two questions, two questions that you basically have to answer. The first and foremost is whether my client, Mr. Tracy had knowledge of the proceedings against his brother. After all, how can you threaten somebody or retaliate against them by testifying in a case that you have no knowledge of.

\* \* \*

The State didn't bring any witnesses in here to say, to make the link between my client and the proceedings facing his brother. Also, I indicated that the second question that we'd need to ask that would be up to you is whether, if there was a threat, whether that threat was an intent to retaliate or whether it was ... had an intent to intimidate and influence [Sheryl]. It's not enough that simply because [Sheryl] is a witness in a crime, or that ... that nobody can make a threat ... threat against her. No, that threat has to be specifically targeted to insure that she won't testify, or

---

**3.** CL § 9–301(d) provides:

9–301(d) Witness.—"Witness" means a person who:

(1) has knowledge of the existence of facts relating to a crime or delinquent act;

(2) makes a declaration under oath that is received as evidence for any purpose;

(3) has reported a crime or delinquent act to a law enforcement officer, prosecutor, intake officer, correctional officer, or judicial officer; or

(4) has been served with a subpoena issued under the authority of a court of this State, any other state, or the United States

to intimidate her against testifying, and that's simply not the case here.

\* \* \*

Mr. Tracy is not here for making ... for writing an inappropriate letter. What he's here for is intimidating, influencing, or impeding a witness. There's been no evidence that he made a threat to [Sheryl] that, in order for her not to testify, to appear to testify.

Petitioner now argues that he is entitled to a reversal of his conviction under Count 2 because the State did not produce evidence that Sheryl had been served with a subpoena to testify in District Court Case No. 3J16341. While we do have discretion to review "unpreserved" arguments, we decline to consider this one. Had Petitioner's trial counsel moved for a judgment of acquittal on the ground that the State had failed to establish that Sheryl had been subpoenaed to testify as a State's witness in the case of *State v. Marshall Ebling*, the State could have requested "leave to reopen its case-in-chief" to produce that evidence. Because this "sufficiency" argument was not made at a time when the Circuit Court could have exercised discretion to permit the State to reopen its case-in-chief, we shall not review it.

### CL § 9–303

It is clear that in Count 1 of the charging document, Petitioner was charged with threatening to harm Sheryl *if* she testified for the State in the case of *State v. Marshall Ebling*, rather than *because* she had reported Ebling's past criminal conduct. Petitioner now argues that his conviction under CL § 9–303 must be reversed because that statute does not proscribe threats uttered with the intent to prevent a victim or witness from taking action in the future. Although this argument was not presented to the Circuit Court, for the reasons stated in *Moosavi v. State*, 355 Md. 651, 662–63, 736 A.2d 285, 291 (1999), we shall exercise our discretion to determine the relationship between CL § 9–302 and CL § 9–303.

It is clear from an examination of the statutes enacted to protect victims and potential witnesses that the General Assembly intended that those persons be protected against two types of verbal and nonverbal criminal conduct: (1) conduct undertaken with the intent to retaliate against a person who *has* reported a crime, or *has given* testimony in a criminal case, and (2) conduct undertaken with the intent to prevent a victim or witness from reporting a crime that he or she has not yet reported and/or to prevent a victim or witness for testifying in a proceeding that has not yet taken place. From our review of the applicable statutes and the relevant legislative history, we conclude as follows: The threat, "I will harm you *because* you reported a crime" is proscribed by CL § 9–303(a)(2). The threat, "I will harm you *because* you testified" is proscribed by CL § 9–303(a)(1). The threat, "I will harm you *if* you report the crime" is proscribed by CL § 9–302(a)(2)(iii). The threat, "I will harm you *if* you testify" is proscribed by CL § 9–302(a)(1).

CL § 9–302 and CL § 9–303 were originally enacted by the same piece of legislation—Senate Bill (SB) 261, Chapter 223 Acts of 1993. The legislative history of SB 261 includes the following testimony from the Honorable Alexander Williams Jr., then the State's Attorney for Prince George's County:

.... Murders and other violence, much of it related to drug trafficking, has continued to increase not only in our county but also in other areas of the State—particularly Baltimore City. Along with this rise in violence we continue to see an increased hesitancy on the part of witnesses to testify about what they saw. It is not simply the case of idle threats and unwarranted perceptions on the part of witnesses and victims. We have had witnesses murdered in Prince Georges County. Others have been beaten, terrorized, and threatened. The problem is real, immediate, and growing.

\* \* \*

SB–261 grew out of discussions in my office about how to deal with this threat to our criminal justice system. It is extremely difficult and expensive to give direct police pro-

tection to victims and witnesses and that protection is available in only the rarest of cases. Beyond that, we decided the next best thing would be to draft a comprehensive bill to deal with the problem in a couple of different ways. It represents our best attempt to improve a very difficult situation.

This bill attacks the problem in a number of ways … SB–261 creates four new crimes which prohibit bribing witnesses and assaulting or threatening to assault witnesses or victims. These new crimes and the harsh penalties attached to them, should provide increased deterrence.

The legislative history also includes a "bill analysis," confirming that the "four new crimes" prohibit

(1) a person from conferring, offering to confer, or agreeing to confer a benefit upon a victim or witness with the intent to influence the victim or witness to testify falsely or withhold testimony;

(2) a person from harming or injuring any person or damaging or destroying any property or threatening to harm or injure any person or damage or destroy any property with the intent to influence a victim or witness to avoid legal process summoning the victim or witness to testify or be absent from an official proceeding to which the victim or witness has been legally summoned;

(3) a person from intentionally harming or injuring any person or damaging or destroying property with the intent of retaliating against a victim or witness for giving testimony in an official proceeding or for reporting a crime; and

(4) a person from intentionally inducing or attempting to induce a victim or witness to testify falsely, avoid legal process summoning the victim or witness to testify, or be absent from an official proceeding to which the victim or witness has been legally summoned.

As a result of the enactment of Chapter 223, the following statutes were included in Article 27 of the Maryland Code, effective October 1, 1993:

§ 767

(A) A PERSON MAY NOT CONFER, OFFER TO CONFER OR AGREE TO CONFER A BENEFIT UPON A VICTIM OR WITNESS WITH THE INTENT TO:

(1) INFLUENCE THE VICTIM OR WITNESS TO TESTIFY FALSELY OR WITHHOLD TESTIMONY

(2) INDUCE A THE VICTIM OR WITNESS TO AVOID LEGAL PROCESS SUMMONING THE VICTIM OR WITNESS TO TESTIFY OR

(3) INDUCE THE VICTIM OR WITNESS TO BE ABSENT FROM AN OFFICIAL PROCEEDING TO WHICH THE VICTIM OR WITNESS HAS BEEN LEGALLY SUMMONED

§ 768

(A) A PERSON MAY NOT HARM OR INJURE ANY PERSON OR DAMAGE OR DESTROY ANY PROPERTY OR THREATEN TO HARM OR INJURE ANY PERSON OR DAMAGE OR DESTROY ANY PROPERTY WITH THE INTENT TO:

(1) INFLUENCE THE VICTIM OR WITNESS TO TESTIFY FALSELY OR WITHHOLD TESTIMONY

(2) INDUCE A THE VICTIM OR WITNESS TO AVOID LEGAL PROCESS SUMMONING THE VICTIM OR WITNESS TO TESTIFY OR

(3) INDUCE THE VICTIM OR WITNESS TO BE ABSENT FROM AN OFFICIAL PROCEEDING TO WHICH THE VICTIM OR WITNESS HAS BEEN LEGALLY SUMMONED

§ 769

(A) A PERSON MAY NOT INTENTIONALLY HARM OR INJURE ANY PERSON OR DAMAGE OR DESTROY ANY PROPERTY WITH THE INTENT OF RETALIATING AGAINST A VICTIM OR WITNESS **FOR GIVING TESTIMONY IN AN OFFICIAL PROCEEDING OR FOR REPORTING A CRIME.**

(Emphasis supplied).

§ 770

(A) A PERSON MAY NOT INTENTIONALLY INDUCE OR ATTEMPT TO INDUCE A VICTIM OR WITNESS TO:

(1) TESTIFY FALSELY OR WITHHOLD TESTIMONY

(2) AVOID LEGAL PROCESS SUMMONING THE VICTIM OR WITNESS TO TESTIFY; OR

(3) BE ABSENT FROM AN OFFICIAL PROCEEDING TO WHICH THE VICTIM OR WITNESS HAS BEEN LEGALLY SUMMONED.

In *Gillespie v. State*, 370 Md. 219, 804 A.2d 426 (2002), this Court stated that "[w]e interpret statutes to give every word effect, avoiding constructions that render any portion of the language superfluous or redundant." *Id.* at 222, 804 A.2d at 427. In *W. Corr. Inst. v. Geiger*, 371 Md. 125, 807 A.2d 32 (2002), we stated that "in determining a statute's meaning, courts may consider the context in which a statute appears, including related statutes and, even when a statute is clear, its legislative history." *Id.* at 143, 807 A.2d at 42. Applying these principles of statutory interpretation, we conclude that the words "retaliating against a victim or witness for giving testimony" in Art. 27, § 769 are applicable to acts of retaliation against a victim or witness who has already testified, while Art. 27, § 768 is applicable to criminal conduct undertaken with the intent to prevent a victim or witness from testifying in the future.

In 1996, former §§ 767 through 769 were transferred to §§ 761 through 763.[4] Effective October 1, 1996, these statutes, in pertinent part, provided:

§ 761.  Inducing False Testimony

(a) Prohibited Acts—A person may not harm or injure any person or damage or destroy any property or threaten to harm or injure any person with the intent to:

(1) Influence a victim or witness to testify falsely or withhold testimony;

---

4.  Section 7, ch. 585 Acts of 1996

(2) Induce a victim or witness to avoid legal process summoning the victim or witness to testify; or

(3) Induce a victim or a witness to be absent from an official proceeding to which the victim or witness has been legally summoned.

§ 762. Retaliation for testimony.

(a) Prohibited acts.—A person may not intentionally harm or injure any person or damage or destroy any property with the intent of retaliating against a victim or witness for giving testimony in an official proceeding or for reporting a crime.

In 2002, the General Assembly "repealed Art. 27—Crimes and Punishments," and "added a new article to the Annotated Code of Maryland, to be designated and known as the Criminal Law Article." As a result of the 2002 amendments, former Art.27 § 761 was codified in CL § 9–302, and former Art. 27 § 762 was codified in CL § 9–303. Effective October 1, 2002, the recodified statutes, in pertinent part, provided:

§ 9–302. Inducing false testimony or avoidance of subpoena

(a) Prohibited.—A person may not harm another, threaten to harm another, or damage or destroy property with the intent to:

(1) influence a victim or witness to testify falsely or withhold testimony; or

(2) induce a victim or witness:

(i) to avoid the service of a subpoena or summons to testify;

(ii) to be absent from an official proceeding to which the victim or witness has been subpoenaed or summoned.

(b) Penalty.—A person who violates this section is guilty if a misdemeanor and on conviction is subject to imprisonment not exceeding 5 years.

§ 9–303. Retaliation for testimony

(a) Prohibited.—A person may not intentionally harm another, threaten to harm another, or damage or destroy

property with the intent of retaliating against a victim or witness for:

(1) giving testimony in an official proceeding; or

(2) reporting a crime or delinquent act.

(b) Penalty.—A person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 5 years.

Both CL § 9–302 and CL § 9–303 were amended by Chapter 461, Acts of 2005. Since October 1, 2005, CL § 9–302 has, in pertinent part, provided:

(a) Prohibited.—A person may not harm another, threaten to harm another, or damage or destroy property with the intent to:

(1) influence a victim or witness to testify falsely or withhold testimony; or

(2) induce a victim or witness:

(i) to avoid the service of a subpoena or summons to testify;

(ii) to be absent from an official proceeding to which the victim or witness has been subpoenaed or summoned; or

**(iii) not to report the existence of facts relating to a crime or delinquent act.**

(Emphasis supplied).

Since October 1, 2005, CL § 9–303 has, in pertinent part, provided:

§ 9–303. Retaliation for testimony

(a) Prohibited.—A person may not intentionally harm another, **threaten to harm another,** or damage or destroy property with the intent of retaliating against a victim or witness for:

(1) giving testimony in an official proceeding; or

(4) reporting a crime or delinquent act.

\* \* \*

(d) Sentence.—A sentence imposed under this section may be separate from and consecutive to or concurrent with a sentence for any crime based on the act establishing the violation of this section.

(Emphasis supplied).

The 2005 amendments to CL § 9–303 simply closed a loophole that had existed until that time by adding *threats* uttered in retaliation for giving testimony or reporting a crime to the proscription against *actual retaliation* against a victim or witness who has reported a crime or given testimony. Those amendments did not make CL § 9–303 applicable to threats uttered in an effort to prevent a victim or witness from taking action in the future.

When a defendant has been charged and convicted under an inapplicable statute, the resulting sentence "is an illegal sentence which may be challenged at any time." *Moosavi, supra,* 355 Md. at 662, 736 A.2d at 291. In the interest of judicial economy, we reverse the judgment affirming Petitioner's conviction on Count 1. The judgment of the Court of Special Appeals is otherwise affirmed.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED IN PART; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF CONVICTION ENTERED ON COUNT 1; JUDGMENT OTHERWISE AFFIRMED; PETITIONER TO PAY 50% OF THE COSTS; 50% OF THE COSTS TO BE PAID BY CAROLINE COUNTY.**

BELL, C.J., HARRELL, BATTAGLIA and ELDRIDGE, JJ., concur and dissent.

HARRELL, J., concurring and dissenting, in which BATTAGLIA, J., joins.

If, as the plurality opinion maintains, Maryland Code, Criminal Law Article § 9–303 criminalizes the making of threats in retaliation against a victim or witness who gave (past tense) testimony in an official proceeding *or reported a crime* and

§ 9–305(a) criminalizes the making of threats to influence, intimidate, or impede a witness from testifying prospectively, then Tracy's letter of 28 December 2007 violated both statutes. His convictions under both statutes should be affirmed.

For purposes of Title 9, Subtitle 3 of the Criminal Law Article, Sheryl L. was both "victim" [1] and a "witness." [2] In December of 2007, Sheryl L. reported that her windshield had been broken by Ebling, Tracy's brother. Her report lead to criminal charges against Ebling where she was the victim. Indubitably, Sheryl L. would have been the State's complaining witness at Ebling's trial.

Tracy's letter may be read fairly as to, at the time the letter was sent and received: (1) threaten Sheryl L. in retaliation for the past act of having reported (as the victim) Ebling's criminal act perpetrated against her property, and (2) intimidate or influence her prospectively not to participate as a witness in the prosecution of the charges filed against Ebling. Thus, both §§ 9–303 and 9–305(a) were violated separately in Tracy's letter, i.e., two discrete criminal acts in one letter.

I join the plurality opinion's affirmance of Tracy's conviction of a violation of § 9–305(a), but dissent from its reversal of the conviction under § 9–303. Therefore, I would affirm the judgment of the Court of Special Appeals.

Judge BATTAGLIA authorizes me to state that she joins the views expressed here.

ELDRIDGE, J., concurring in part and dissenting in part.

I concur in the result with respect to the Court's reversal of the Court of Special Appeals' judgment affirming Tracy's

---

1. "Victim" is defined as "a person against whom a crime ... has been committed or attempted." Md.Code Ann., Crim. Law § 9–301(c) (LexisNexis 2002).

2. "Witness," for purposes of the circumstances of this case, is defined as "a person who (1) has knowledge of the existence of facts relating to a crime ... [or] (3) has reported a crime ... to a law enforcement officer, prosecutor ... or judicial officer...." Md.Code Ann., Crim. Law § 9–301(d)(1), (3) (LexisNexis 2002).

conviction on Count 1. I dissent, however, from the affirmance of the Court of Special Appeals' judgment affirming the conviction on Count 2. In my view, Tracy's letter was too ambiguous to support either conviction. Consequently, both judgments should be reversed for insufficient evidence.

Chief Judge BELL joins in this opinion.